HUDSON v. CAHOON, Appellant.

Division One, February 22, 1906.

1. **APPELLATE PRACTICE: No Motion for New Trial.** Where the record discloses no motion for new trial filed and no bill of exceptions filed, the case stands for adjudication in the appellate court on the record proper.

2. **PRACTICE: Demurrer: Answer: Waiver.** Answering over after demurrer overruled waives all objections to the petition except two, namely, that the petition does not state facts sufficient to constitute a cause of action, and, second, that the court has no jurisdiction over the subject-matter; but those two objections are available to the defendant at any time in any court, while the case is pending, either in the trial or appellate court, and whether they were raised by demurrer or not.

3. **LIMITATIONS: Minerals: Easement: Principal and Agent: Profits of Sale: Fraud: Notice.** Defendant was authorized by plaintiff to sell land, and secured from him a deed with the name of the grantee left blank, the expressed consideration being $180, and afterwards filled in his own name; and sold a part of it for $764.55, and reserved to himself in the deed the mineral, marble and granite in, on or under the land together with the right of ingress or egress to or from the same, to mine and work it; and plaintiff sues for defendant's profit in the sale, or the difference between the $764.55 and $180, and also to divest out of defendant the title which he reserved in himself to the mineral, etc., and to vest the same in plaintiff. *Held*, first, that the minerals, marble and granite beneath the surface, and the right

to mine the same, constitute an interest in land, and an ease-
ment, and, therefore the second object of the suit, namely, to
divest the title to these things out of defendant, was not barred
until ten years after the deed was filed, when the cause of action
accrued; second, that part of the action which seeks to recover
the profits realized by defendant from the sale of the land, was
barred in five years after the recording of the deed from plain-
tiff to defendant and of the deed from defendant to his grantee,
for those deeds, in reciting the consideration, disclosed the
profits obtained by defendant, and were notice to plaintiff from
the date of their record, and plaintiff did not prevent the be-
ginning of the running of the statute by alleging that the knowl-
edge of the fraud did not come to him until within five years
before his action was brought.

4. ———: Fraud: Constructive Notice.    Constructive notice of
fraud is sufficient to set the Statute of Limitations in motion,
even though there is no actual notice.

5. ———: ———: ———: Resulting Trust:   Principal and Agent.
The Statute of Limitations runs against an implied or resulting
trust.   And where an agent sells his principal's land and, with-
out the knowledge of his principal, takes the title in his own
name, and afterwards sells the land for a profit, the principal,
at most, has only a resulting trust in the profit.

Appeal from Madison Circuit Court.—*Hon. Samuel Davis*, Special Judge.

REVERSED AND REMANDED.

*Moses Whybark, Robert A. Anthony* and *David M. Tesreau* for appellant.

Plaintiff's action, be it legal or equitable, is, as to the Statute of Limitations, governed by the five-year limit, i. e., by the fifth subdivision of section 4273, R. S. 1899; that is the only statute which would entitle re-spondent in any event to any relief; the petition after alleging the recording of Hudson's deed to Cahoon on August 27, 1892, and Cahoon's deed to Parks of Novem-ber 24, 1892, is barred on its face because such allega-tions were and are a complete discovery on and from said dates to plaintiff of every fact he alleges.    And, further, the reservation of minerals, etc.; and right of

way in the land had no effect on plaintiff's action because it was not known, nor is it alleged in the petition that any minerals, etc., are in that ground now. Further, the right of plaintiff to recover for any profits Cahoon derived from his sale to Parks was and is not an express trust such as are alone cognizable in equity, to which only the third subdivision of Revised Statutes 1899, section 4277, applies. Keeton v. Keeton, 20 Mo. 530; Landis v. Saxton, 105 Mo. 490; Newton v. Rebenack, 90 Mo. App. 660. We further contend that Hunter v. Hunter, 50 Mo. 445, on which respondent relies, was attempted to be based on the ten-year-limit in the third sub-division of section 4272, Revised Statutes 1899; that that section does not apply even to that case, much less to this case, and that as an authority it is criticised and practically overruled by Rogers v. Brown, 61 Mo. 194. Hughes v. Littrell, 75 Mo. 573.

*Wm. D. Hudson* and *E. D. Anthony* for respondent.

(1) An action to establish a trust growing out of lands, or to recover the proceeds of a re-sale of lands held under a constructive resulting trust, ought to be governed by the same rules as to length of time necessary to set aside a fraudulent conveyance and recover possession of land. Hunter v. Hunter, 50 Mo. 450; Rogers v. Brown, 61 Mo. 191; Zoll v. Carnahan, 83 Mo. 41; Life Ins. Co. v. Smith, 117 Mo. 296. (2) Where one occupies a fiduciary relation towards the owner of land, all gains acquired by him by means of his position, whether through conveyance to him of an adverse interest, or otherwise, belongs to such owner, whether in land or in money. Life Ins. Co. v. Smith, 117 Mo. 294. (3) The relation of client and attorney is one of especial trust and confidence in the attorney. Davis v. Klein, 96 Mo. 401; Eoff v. Irvine, 108 Mo. 378; Aultman, Miller & Co. v. Lorring, 76 Mo. App. 66. (4) A

reservation of mineral and mining rights is construed as an actual grant thereof. Coal and other minerals in place are land, and may be conveyed as such, and, when thus conveyed, constitute a separate and distinct inheritance. Wardell v. Watson, 93 Mo. 107; Kirk v. Mattier, 140 Mo. 31; Manning v. Coal Co., 181 Mo. 377. (5) The courts have cited and affirmed Hunter v. Hunter, 50 Mo. 445, in the following and other cases: Lewis v. Schwenn, 93 Mo. 31; Burdett v. May, 100 Mo. 20; Sherwood v. Baker, 105 Mo. 478; Newton v. Rebenack, 90 Mo. App. 660.

MARSHALL, J.—This is an action to divest out of defendant, and vest in the plaintiff, the right and title to all the mineral, marble and granite on or under a certain tract of land in Madison county, in the State of Missouri, together with a right of ingress and egress' from the same to mine and work said land, and to recover $584.55 profits, alleged to have been received by the defendant while acting as the agent of the plaintiff in respect to said land. There was no motion for new trial or bill of exceptions filed so far as is disclosed by the record here, and therefore the case stands for adjudication, in this court, upon the record proper.

On the 20th of February, 1902, the plaintiff instituted this suit. The petition (omitting caption) is as follows:

"Now comes plaintiff, and by leave of court first had files his amended petition and for his cause of action states that on the 6th day of June, 1892, and for a long time prior thereto, he was the owner of a certain tract of land, situated in the county of Madison and State of Missouri, and described as follows, to-wit:

"'All the land formerly owned by William A. Hudson in the Peter Burn's survey numbered 3171, and in the William Dillon survey numbered 3125, which lies south and east of Mill creek and the prongs there;

which is to include. [Here follows a discription of 56.3 acres, together with a lane, 16 and one-half feet wide leading thereto.]

"That on said 6th day of June, 1892, and for several years prior thereto, defendant was the agent of plaintiff for the management and sale of said land. That during all of said periods, plaintiff was a resident of the city of St. Louis, Missouri, and defendant was a resident of said county of Madison. That on, to-wit, about the 26th day of May, 1892, defendant, while acting as said agent of plaintiff, represented to plaintiff that he thought he could sell forty acres of the aforesaid land for the sum of one hundred and fifty dollars and requested plaintiff to execute and return to defendant a blank deed to all of said land, which said blank deed was forwarded by defendant to plaintiff at said time, with the name of the grantee being left blank in said deed. That plaintiff, being wholly ignorant of the value of said land and relying wholly upon defendant, his agent, in said transaction, did on the 6th day of June, 1892, execute said blank deed to said land, the name of the grantee being left blank in said deed, and forwarded said deed to defendant.

"That thereafter, defendant, without the knowledge or consent of plaintiff, and with the fraudulent design of obtaining plaintiff's said land at a sum far below its value, did fraudulently cause his (defendant's) own name to be inserted as grantee in said blank deed, and thereafter caused said deed to be recorded on the 27th day of August, 1892, in book 17, at page 475, in the office of the recorder of said Madison county, Missouri. That the consideration named in said deed was one hundred and eighty dollars and that, to-wit, on or about the 17th day of November, 1892, defendant paid to plaintiff the sum of one hundred sixty-five dollars, being the aforesaid consideration named in said deed less the sum of fifteen dollars, which said sum defendant deducted for services in making said deed and for pay-

ing the taxes on said land. That said land, during all said times, was worth much more than said sum of one hundred and eighty dollars, which fact was well known to defendant.

"That on, to-wit, about the 24th day of November, 1892, defendant, by deed, conveyed all agricultural and timber rights, interests and values with possessory rights in and to said above-described land to one William Parks of said Madison county for the sum of $764.55. Wherefore defendant became indebted to plaintiff in the sum of $584.55, as agent and trustee of plaintiff, said sum being the profit realized by defendant by the sale of said land to Parks as aforesaid. That defendant refused and still refuses to account to plaintiff for said sum.

"That in said deed from defendant to said Parks, defendant reserved to himself the right and title to all mineral of every nature and marble and granite in, on or under said above-described land, together with the right of ingress and egress from the same to mine and work said land.

"That defendant has at all times concealed from plaintiff the fact that he inserted his (defendant's) name as grantee in said deed, as aforesaid, and has likewise concealed from plaintiff the fact that defendant sold said land to said Parks as aforesaid, and plaintiff states that these facts came to his knowledge for the first time on the — day of April, 1901.

"Wherefore, plaintiff prays judgment against the defendant for said sum of five hundred and eighty four dollars, together with interest thereon at the rate of six per cent per annum from said 24th day of November, 1892; that defendant be ordered to re-convey to plaintiff all the title and interest in said land reserved as aforesaid by defendant in his said deed to said Parks, and the plaintiff be granted a decree divesting all said title and interest out of defendant and vesting the same in plaintiff; that the defendant be ordered to

give a full and complete accounting to plaintiff of his trust in managing and selling said land as agent of plaintiff, for his costs herein, and for such further relief as to the court may seem just and proper.''

The defendant demurred to the petition, and the demurrer being overruled, he answered over. The answer is a general denial of all allegations not expressly admitted. It then admits that on the 6th of June, 1892, the plaintiff owned the surface, timber and agricultural rights in and to the lands described in the petition, and the right of ingress and egress; that, on said date, the plaintiff acknowledged a deed to said land, leaving the name of the grantee blank, for a consideration of one hundred and eighty dollars, and that the defendant filled in his name as grantee, and caused the deed to be filed for record in Madison county, on the 27th of August, 1892, but denies that he thereby defrauded or attempted to defraud the plaintiff; admits that the consideration named in the deed was one hundred and eighty dollars, which he alleges he paid as follows: cash to the plaintiff one hundred and thirty-one dollars and thirty-five cents; services to the defendant for making the deed and for payment of taxes, fifteen dollars; thirty-three dollars and sixty-five cents other charges were then made by the defendant against the plaintiff, and set forth in the account filed with the answer; admits that the defendant sent the deed to the plaintiff to be executed and acknowledged with the name of the grantee in blank, and that it was intended to and did include and convey the land now described in it, and that, after the 27th of August, 1892, the plaintiff had notice, and was informed by the defendant that the deed executed, delivered and recorded was to the defendant; alleges that the location, quality and character of the land was well known to the plaintiff before he made the deed; alleges that on the 8th of July, 1892, while the deed was in the defendant's possession, as plaintiff well knew, with the name of the grantee still in blank,

the plaintiff personally visited the land, went over it and familiarized himself with it, and urged the defendant to sell the land for not less than one hundred and fifty dollars, and to make the sale as speedily as possible; that plaintiff had, for a long time, been anxious to sell the land; that defendant sought to sell the land speedily, and was unable to do so, and that to oblige the plaintiff and enable him to dispose of the land, he, on the 27th of August, 1892, concluded to take the land himself, and filled in his own name as the grantee, and paid the plaintiff the consideration named in the deed of one hundred and eighty dollars, in the manner aforesaid; that the land was unimproved timber land, of very cheap quality, and owing to the dullness of the times and the financial stringency then existing, could not easily be sold, and that it was not then worth more than one hundred and eighty dollars; that on the 27th of August, 1892, when he filled in his name as grantee, and recorded the deed, and remitted the payment to the plaintiff, the plaintiff was in Europe, temporarily, but returned on the 7th of November, 1892, examined the account stated and remitted to the defendant the ninety dollars shown therein to be due the defendant on general account of services rendered and that thereafter the relation of principal and agent or attorney, between the plaintiff and the defendant, ceased, and by reason of the foregoing, the defendant pleads that plaintiff is estopped to maintain this action.

The answer then avers that on the 25th of November, 1892, the defendant notified the plaintiff that said deed had been made to him, and that plaintiff acquiesced in, approved and ratified all that defendant had done in the premises, and until this suit was brought, nearly ten years thereafter, he never complained or objected, and by reason thereof, the defendant pleads a ratification by the plaintiff, and also laches on the part of the plaintiff. The answer then avers that long prior to November 17th 1892, the defendant re-

sided at Fredericktown, Madison county, Missouri, and was the agent of the plaintiff prior to that date, but not since, for the purpose of paying taxes on plaintiff's land, located in Madison county, and to sell the same for plaintiff, and that plaintiff owned other lands in said county than those embraced in this suit. The answer then pleads that this action was not brought within five years from the time the cause of action accrued, and, therefore, it is barred by the five-year Statute of Limitation. It then admits that on the 24th of November, 1892, he sold the land, together with 22 other acres owned by defendant, to William and Maggie Parks, for $1,050, reserving all minerals, marble and granite in or on said land, and the right of ingress and egress over said land, to work the same, if any such there should be; but alleges that in addition to this land, he also sold to said Parks 22 acres of land belonging to him, and that the consideration of $1,050 included both tracts, and the 22 acres belonging to defendant was an inducement to said Parks to purchase the land here in controversy; that the deed to said Parks was recorded on the 24th of November, 1892, and that the plaintiff had due notice thereof. The answer then alleges that thereafter one Edward Perringer claimed to be the owner of 15 acres of said land, and instituted an ejectment suit therefor, against said Parks; that said Parks notified defendant to defend said suit, under the warranty of his deed, and that said suit is still pending, and the defendant is defending the same.

The case was tried on the 4th of April, 1903, and resulted in a judgment for the plaintiff, declaring that the relation of trust and confidence existed between the plaintiff and the defendant, at the date of the execution of the deed of June 6th, 1892, and that by reason thereof the defendant held the land as trustee for the plaintiff, together with all profits realized by defendant therefrom; that defendant realized, as such profits from said lands, from the sale to Parks, the sum of $666.66, and

thereby became indebted to the plaintiff in the sum of $486.66, being the amount of said profits less $180.00 paid by the defendant to the plaintiff.

The decree divested all right, title and interest in the land, reserved by the defendant under his deed to said Parks, out of the defendant, and vested the same in the plaintiff, and forever enjoined the defendant from setting up any right, title or claim to said property; and further adjudged that the defendant pay to the plaintiff $486.66, with interest thereon, aggregating $788.40. From this decree the defendant appealed.

## I.

The defendant contends that notwithstanding he answered over, after his demurrer was overruled, he did not thereby waive his demurrer, and consequently he argues the case here as if he had stood on his demurrer, and he relies upon Hoffman v. McCracken, 168 Mo. l. c. 343, and Paddock v. Somes, 102 Mo. 226, as authority for his position.

The demurrer is set out in the abstract of the record, and alleges six grounds therefor, to-wit:

First. The five-year Statute of Limitation.

Second. That the reserved right to the minerals, contained in the deed from defendant to Parks, does not constitute an estate in land, and therefore, no decree divesting the title out of the defendant, and vesting it in the plaintiff, could be entered, nor does the petition allege that there are any such minerals on the land, and that the right of ingress and egress was conditional upon the existence of such mineral on the land, and consequently the reservation was not of such an estate as a court of equity could divest.

Third. That the petition does not state facts sufficient to constitute a cause of action, either at law or in equity.

Fourth. Because there is an improper joinder of

two causes of action in the same count, one at law and the other in equity.

Fifth. Because there is a misjoinder of causes of action in the same count, one to recover a money judgment, and the other to divest out of defendant an interest in real estate.

Sixth. Because the petition discloses that the plaintiff has been guilty of such laches and want of diligence as will bar a relief of any kind.

Counsel are in error as to the meaning of the cases cited.

The rule of law in this State is well expressed by SHERWOOD, J., in Paddock v. Somes, 102 Mo. l. c. 235, as follows:

"The defendant had waived any irregularity or informality in the petition, or of its union of two causes of action in one count, by pleading to the merits. This has been determined so often in this court that the repetition of this statutory rule would seem to be but a work of supererogation. If a defendant pleads to the merits, he waives everything in the petition but two points: First, That the petition does not state facts sufficient to constitute a cause of action; second, that the court has no jurisdiction over the subject-matter of the action." [Citing cases.]

Speaking to the same question, BURGESS, J., in Hoffman v. McCracken, 168 Mo. l. c. 343, said:

"It is said that the petition fails to state a cause of action, but plaintiff claims that even if this be true, defendants waived the point by answering over after the demurrer to the petition upon that ground was overruled. This position is not, however, well taken, for if there is anything well settled by this court it is, that where a demurrer to a petition has been overruled the defendant, if he answers over, does not thereby waive the objection that the petition fails to state a cause of action. [Paddock v. Somes, 102 Mo. 226, and

authorities cited.] And this question may be raised for the first time in this court."

Those cases, therefore, do not support the defendant's contention that answering over did not waive the demurrer and that the demurrer, in its entirety, is open to review here. On the contrary, those cases simply announce the well-established rule in this State, that answering over, after a demurrer is overruled, does not preclude a defendant from thereafter contending that the petition does not state a cause of action, or that the court had no jurisdiction. These two questions are always open for adjudication on the face of the record proper, whether there was ever a demurrer interposed to the petition or not, and whether or not the defendant had filed an answer to the merits, and, further, whether or not those objections had been raised in the trial court.

The cases cited and relied on by defendant hold that by answering over, the defendant waives all objections to the petition, except the two stated above, and that those two objections are available to the defendant, at any time, in any court, while the case is pending, either in the trial or appellate court, and whether they were raised by demurrer or not. Answering over does not waive those two objections to a petition, but answering over does waive all other objections to a petition.

Hence this case stands before this court for adjudication upon the record proper, and the two objections stated are open to adjudication here, not because they were or were not raised by demurrer, in the lower court, but because they are always present and subject to adjudication at every stage of the case, in any court, to which the case may be taken.

There is no question, in this case, that the court had jurisdiction, both of the subject-matter and of the parties. This leaves for consideration only the question whether or not the petition stated a cause of action,

and whether the judgment entered is authorized by the petition.

The first contention of the defendant is that the action is barred by the five-year Statute of Limitation, and that the cause of action accrued when the defendant inserted his name in the deed as the grantee, and placed that deed on record, on the 27th of August, 1892.

The petition seeks to recover two separate and distinct matters: First, the profits alleged to have been made by the defendant in paying the plaintiff one hundred and eighty dollars for the land, and in shortly thereafter selling the land for $764.55, the difference between those two sums amounting to $584.55, being the profit made by the defendant, which the plaintiff claims enured to his benefit; and the second object of the suit is to divest the title, which the defendant reserved to himself to the mineral, marble and granite, in, on or under the land, together with the right of ingress and egress from the same, to mine and work the land, and to vest the same in the plaintiff.

The second object stated relates to the mineral, marble and granite beneath the surface of the land and the right to mine the same. That was an interest in real estate and also an easement. Whether there was or was not such mineral beneath the surface of the land could only be determined by mining or prospecting for the same, and the right so to do was an easement. Even regarded wholly as an easement, nevertheless, it was an interest in land, and could lie only in grant. [10 Am. and Eng. Ency. Law (2 Ed.), 409].

Being an interest in real estate the plaintiff had a right to maintain the action at any time within ten years after the right of action accrued, under section 4262, Revised Statutes 1899. [Rogers v. Brown, 61 Mo. 187; Hughes v. Littrell, 75 Mo. 573; Dunn v. Miller, 96 Mo. 324.]

The filing of the deed on the 22nd of August, 1892, was the date when the plaintiff's cause of action ac-

crued, for the plaintiff was then charged with notice of the fact that the defendant had so inserted his name in the deed. [19 Am. and Eng. Ency. Law (2 Ed.), 251]. For "constructive notice of fraud is generally regarded as sufficient to set the Statute of Limitations in motion, even though there is no actual notice." [Idem.]

This action was brought on the 20th of February, 1902; and it was therefore brought within ten years from the time the cause of action accrued, so far as the interest in real estate is concerned, and the plaintiff is entitled to maintain the same, unless the defense of laches interposed by the defendant, and hereafter referred to, will prevent recovery.

As to the claim for the profits realized by the defendant, a totally different question presents itself. Conceding that the plaintiff was entitled to those profits, the question is whether or not his claim thereto was barred by limitation, when this action was brought. The petition, seemingly to avoid the operation of the statute, alleges that the facts first came to the knowledge of the plaintiff in April, 1901, and in this way it is sought to bring the case within the fifth paragraph of section 4273, Revised Statutes 1899, which provides that, "An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud," and it is claimed this brings the case within the exception to the five-year limitation prescribed by that section, for bringing "all actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 4272," etc.

In support of his position, the plaintiff relies on the case of Hunter v. Hunter, 50 Mo. 445. That was an action very similar to the case at bar. Its purpose was to set aside a conveyance and to recover profits made by the defendant. It was there held that the ten year Statute of Limitations applies to all actions for

the recovery of land, but, without distinguishing between the character of the two claims made, the one for money had and received, or profits made, and the other for the recovery of land, the court discussed the fifth clause of the five-year Statute of Limitations, which was like the present Statute of Limitations, except that it did not then contain the provision that the fraud should have been discovered "at any time within ten years." That amendment to the statute was made in the revision of 1865, and that feature of the law was overlooked by the court and counsel in that case. The court quoted the statute as it existed in the revision of 1855, and then said: "Where the case is one of fraud, the statute in no case will commence to run until the discovery of the fraud. This was always the equity doctrine, and is still the doctrine under our code." The remark just quoted was with reference to the statute of 1855, and can have no application now, for since 1865 the statute expressly requires that the fraud should have been discovered within ten years after its commission, and that the aggrieved party should then have five years after the discovery thereof in which to bring the action. This conclusion was reached by this court in Rogers v. Brown, 61 Mo. l. c. 194, without noticing the change in the statute, for in that case the court referred to the statement above quoted from Hunter v. Hunter, and said that the rule there announced was the former rule in equity, but added, "We do not conceive it to be the rule now."

The deed from the plaintiff to the defendant, and the deed from the defendant to Parks, were recorded in 1892. They recited the consideration moving to the grantors. They disclosed, on their face, the profit alleged to have been received by the defendant, from the resale of the land. The plaintiff was, therefore, charged with notice of the facts as of those dates. [Bent v. Priest, 86 Mo. l. c. 489.] And the plaintiff would have

193 Sup—36

been entitled to recover the same if he had brought his action at any time within five years from that date. He failed so to do, and therefore his action to recover such profits was barred at the time this suit was brought. To avoid this conclusion, the plaintiff claims that the statute does not run against a trust, and that the defendant held the profits as a trustee for the benefit of the plaintiff. The statute does not run against express trusts, but an express trust is a trust created by deed or law, and such is not the character of the trust relied on in this case. It was an implied or constructive trust, and the Statute of Limitations runs against implied or constructive trusts. [Landis v. Saxton, 105 Mo. 1. c. 489; Reed v. Painter, 145 Mo. 1. c. 356.]

It follows that the petition shows on its face that the plaintiff was barred of the right of recovery as to the profits, but that he was not barred of his right of recovery as to the interest in the land, unless by reason of laches, now to be considered.

## II.

The defendant next contends that the petition shows on its face such laches as bars a right of recovery as to the interest in the land.

Under the code in this State the Statute of Limitations applies to equitable as well as legal actions. In equity, however, a party may be denied relief on account of laches, although the statutory period of limitation has not expired. The general rule of law is thus stated in 18 Am. and Eng. Ency. Law (2 Ed.), 100:

"Lapse of time, when it does not operate as a statutory or positive bar, operates by way of evidence, and may create a presumption that parties have waived or abandoned their rights. But it has been laid down that this presumption, being a presumption of fact, may be repelled by proof of other incompatible facts. . . . It has been held that so long as the relative posi-

tions of the parties are not altered to the defendant's prejudice, delay is of very little consequence."

The rule here stated was quoted approvingly and followed in Newman v. Newman, 152 Mo. 398.

The same doctrine was announced in Weir v. Lumber Co., 186 Mo. l. c. 396, where it was said: "The defendant next contends that the plaintiff is estopped by his laches from setting up title at this late day. Estoppel means that a party has been guilty of some failure to assert a right at the time he should have done so, in consequence of which another has so acted with respect to the subject-matter that loss would result to him, if the guilty or silent party was allowed afterwards to assert his right."

The Encyclopedia further states the rule as follows:

"And where the delay is not sufficient to bar the corresponding legal remedy, it will not deprive a party of his equitable remedy, unless the neglect has so prejudiced the other party by loss of testimony or means of proof, or changed relations, that it would be unjust to permit the complainant to exercise his right.

"The degree of laches which is sufficient to preclude relief varies according to the nature of the transaction involved in the suit. If the property is of a speculative or fluctuating character, it is the duty of the plaintiff to press his claim at the earliest possible time. This rule is applied with great strictness in the case of mining property, such property being of a specially precarious nature, and exposed to the utmost fluctuations in value, and a similar rule is recognized in the case of sales for trade purposes, and in the sale of a lease for lives. Where the property in question has greatly increased in value, unexplained delay on the part of the complainant will be fatal to his case, for, though time be not of the essence of the contract, a court of equity will not allow a delay which would enable the party to take advantage of the turn in the

market and have the contract performed only in case it suited him to do so." [18 Am. and Eng. Ency. Law (2 Ed.), 101 and 102.]

So far as the petition discloses the laches of the plaintiff in this case have not operated to the injury of the defendant, and, therefore, on the face of the petition, the conditions necessary to defeat the plaintiff's claim on the ground of laches, are not apparent in this record. What the true facts may be, or may hereafter appear upon the re-trial of the case, of course, are not now disclosed or known to the court, but will be considered by the trial court on the trial anew.

It follows that the judgment of the circuit court must be reversed, and the cause remanded to be tried again in conformity to the principles here announced.

All concur.