GWENDEN SHAFFER, By Her Guardian and Curator and Next Friend, JULIA SHAFFER, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY and THOMAS TORPEY, Appellants.

Division One, August 15, 1923.

1. **NEGLIGENCE: Contributory: Automobile Crossing Railroad Without Halting: Excessive Speed of Train: No Warning.** To fail to halt an automobile before going upon a railroad crossing is not conclusive evidence of contributory negligence. A railroad crossing in a small town had been left open by the movement of a freight train on a passing track very shortly before the automobile, driven slowly by persons unacquainted with the crossing, entered upon the main track, and was struck by a through train running on the main track at a speed of fifty miles an hour; the passing track was ten inches lower than the main track and eight feet and four inches from it, and the freight train was a very long one and its caboose and other cars made it impossible for the automobile

travelers to see further up the main track than seventy-five feet; and the bell of the passenger train was not rung, nor the whistle sounded, nor other warning of its approach given. *Held*, that the court properly submitted to the jury the question of contributory negligence.

2. ————: Misjoinder of Causes of Action: Injury to Self and Death of Parents. A minor child may in one count of her petition sue for the statutory penalty for the negligent killing of her father, in another for the statutory penalty for the negligent killing of her mother, and in another for damages for personal injuries to herself, where all are caused by the negligent collision of a rapidly-moving passenger train with the automobile in which the three were riding, and recover by the same verdict on all three counts. She does not sue in such case in her representative or fiduciary capacity, but in her own right, and there is no misjoinder of causes of action. The three causes of action arose out of "the same transaction connected with the same subject of action," and under the statute (Sec. 1221, R. S. 1919) they could all be united in the same petition.

3. ————: ————: Different Actions Arising from One Tort. Three different rights of action, arising out of the same tort or transaction in favor of the one plaintiff, may be united in different counts in one petition.

4. ————: ————: Waiver. Defendants filed their demurrers charging that several causes of action were improperly united in the petition, and that there was a misjoinder of parties defendant; these having been overruled, they filed their answer; afterwards, before the beginning of plaintiff's testimony, they filed motion to compel plaintiff to elect, and these being overruled the case went to trial. *Held*, that there was a waiver of the objection of misjoinder of causes and of misjoinder of parties.

5. ————: Penalty: Section 4217: Constitutional: Equal Protection: Discrimination Between Corporations. The uniform ruling that the amount recoverable under Section 4217, Revised Statutes 1919, from a public carrier, for the negligent killing of a person, is penalty, does not violate the Fourteenth Amendment, nor does said statute deny the equal protection of the laws guaranteed by said amendment, by imposing such penalty only upon public carriers and their servants causing death by an ordinary act of negligence, and failing to impose it upon other corporations and individuals similarly situated and guilty of a like delinquency.

6. ————: ————: ————: ————: Payable to School Fund. Section 4217, Revised Statutes 1919, fixing a penalty against a public

Shaffer v. Rock Island Railway Co.

carrier for the negligent killing of a person, and providing that said penalty may be recovered in a civil action by the widow or children of such person, is not violative of Section 8 of Article XI of the Constitution declaring that "the clear net proceeds of all penalties and forfeitures . . . shall belong to and be securely invested and sacredly preserved in the several counties as a county public school fund." That constitutional provision refers to penalties accruing to the public, and not to penalties recoverable by private persons for their own use, and Section 4217 is leveled solely at a violation of private rights.

7. ———: Lessor and Lessee: Recovery Against Both: Pleading. Where two companies, one the lessee and the other the lessor of the railroad, are joined as defendants in an action for the recovery of the penalty imposed by the statute for the negligent killing or injury of a person, in which it is charged that the injuries were inflicted by a train negligently operated by the lessee, a petition setting forth the facts constituting the lease and asking for judgment against both companies is sufficient to hold the lessor company upon its statutory liability, without a separate specific prayer for judgment against the lessor and without a specification of the grounds upon which the judgment is asked. The statute (Sec. 9879, R. S. 1919) says that the lessor is liable "the same as if it operated the road itself," and another statute (Sec. 1160, R. S. 1919) says that the plaintiff, in seeking one satisfaction for the one tort, can join both the lessor and lessee as defendants, and hence the negligence of the lessee is imputable to the lessor.

8. ———: ———: Liability of Lessor Under Section 4217: Penalty and Compensation. The statute (Sec. 9880, R. S. 1919) provides that the company owning a railroad "shall remain liable for all acts, debts, claims, demands, justments and liabilities of the lessee . . . the same as if it (the lessor) operated the road . . . itself" and "may sue and be sued in all cases and for the same causes, and in like manner, as if operating its own road," and that statute and Section 4217 must be construed together in so far as they deal with the same subject, and when so construed Section 9880 does not make the lessor liable for compensatory damages only, but includes and embraces the civil liability for the penalty imposed by and accruing under Section 4217 for the negligent acts of the lessee.

Appeal from Clinton Circuit Court.—*Hon. A. M. Tibbels, Judge.*

AFFIRMED.

*John E. Dolman* for appellants.

(1)    The court erred in refusing to instruct the jury to find for the defendants upon the first and second counts of plaintiff's petition, for the reason that under the undisputed evidence plaintiff's intestates drove upon the crossing at a rate of speed of ten or fifteen miles an hour without slackening the speed of their car, and when defendants' train was in plain view when the automobile reached a point at least thirty feet from the crossing. In thus failing to look or listen and in approaching the crossing without having their automobile under such control and run at such speed that it could have readily been stopped upon the first appearance of danger, plaintiff's intestates were guilty of negligence as a matter of law.    State ex rel. Hines v. Bland, 237 S. W. 1018; Freie v. Railroad, 241 S. W. 671; Evans v. Ill. Cent. Ry., 233 S. W. 399;   Kelsay v. Railroad, 129 Mo. 372; Hayden v. Railroad, 124 Mo. 566; Alexander v. Railroad, 233 S. W. 44; Spanhurst v. United Rys.; 238 S. W. 397; Neosho Grocery Co. v. Railway, 238 S. W. 514; Gersman v. Railway, 229 S. W. 167; Hall v. Railway, 240 S. W. 176; Stotler v. Railroad, 204 Mo. 619; England v. Ry. Co., 180 S. W. 32; Dey v. United Rys. Co., 140 Mo. App. 461.
(2)    The court erred in refusing to instruct the jury to find for the defendants under the second count of her petition, for the reason that plaintiff's intestates, Paul Shaffer and Goldie Shaffer, and George Yountsey and his wife, were engaged in a common and mutual enterprise of business and pleasure, in taking a camping-out trip to Colorado at the time the accident occurred.    Under this state of facts there existed a mutual responsibility.    Shultz v. Old Colony Street Ry. Co., 193 Mass. 309, 8 L. R. A. (N. S.) 597; Moon v. Transit Co., 237 Mo. 435; Koplitz v. St. Paul, 86 Minn. 373, 58 L. R. A. 74; Teal v. St. Paul Ry., 96 Minn. 379; Omaha Ry. Co. v. Talbot, 48 Neb. 627; Tannehill v. Ry. Co., 213 S. W. 818; Knightstown v. Musgrove, 116 Ind. 121; Brommer v. Pa. Ry. Co., 179 Fed. (C. C. A.) 581, 29 L. R. A. (N. S.)

924, 223 U. S. 628; Hall v. Ry. Co., 244 Fed. (C. C. A.) 104. When a husband and wife riding in a vehicle driven by the husband were engaged in a joint enterprise (in this case a fishing trip) the negligence of either is chargeable to the other. Del. & Hudson Ry. v. Borden, 269 Fed. (C. C. A.) 881; Phila. & Reading Ry. v. LeBarr, 265 Fed. (C. C. A.) 129; Davis v. Ry. Co., 159 Fed. (C. C. A.) 19; Noakes v. N. Y. Cent. Ry., 106 N. Y. Supp. 522; Read v. N. Y. Cent. Ry., 107 N. Y. Supp. 1067.    (3) The court erred in overruling defendants' demurrer and motion to elect upon which cause of action stated in the first, second and third counts of her petition she would proceed to trial.    Plaintiff seeks to recover damages for injuries to her person under the third count of her petition, under the third class of causes of action which may be united in the same petition under Section 1221, R. S 1919, and in the same petition seeks to recover in a representative capacity for a penalty under the first and second counts of her petition, which is imposed by operation of law, under the seventh class of causes of action, which may be united in the same petition.    The causes of action thus united not belonging to the same class, it was error to overrule defendants' demurrer and motion to elect.    Sec. 1221, R. S. 1919; Hodgson Davis Grain Co. v. Hickey, 200 S. W. 438; Southworth Co. v. Lamb, 82 Mo. 242; Scott v. Taylor, 231 Mo. 670; Jordan v. Transit Co., 202 Mo. 418.    (4)    The court erred in refusing to instruct the jury to find for the defendants and erred in overruling defendants' motion in arrest of judgment, for the reason that Section 4217, Revised Statutes 1919, under which this action is prosecuted, as construed by this court in its last controlling decision, is in conflict with the Fourteenth Amendment to the Constitution of the United States.    The last controlling decision of this court construing said statute is that of Grier v. Ry. Co., 228 S. W. 454, holding that the recovery therein provided for was strictly and primarily penal and "that the addition of the words 'as penalty' show beyond all ques-

tion that the Legislature intended that the entire forfeiture provided by the statute as amended is to be enforced in all cases as a punishment, and that the amount thereof is not limited or controlled by the rules of law that govern the assessment of compensatory damages." In other words, the Legislature has selected public carriers and their servants as an object of punishment for death caused by an ordinary act of negligence, when other classes of corporations and individuals similarly situated and guilty of a like delinquency are not punished. A., T. & S. F. Ry. Co. v. Matthews, 174 U. S. 95; Gulf C. & S. Ry. Co. v. Ellis, 165 U. S. 159; Connolly v. Union Pipe Line, 184 U. S. 540; A. T. & S. F. Ry. Co. v. Vosburg, 238 U. S. 56; Barbier v. Connolly, 113 U. S. 27; United States v. Armstrong, 265 Fed. 691; Hines v. Clarendon Levee Dist., 264 Fed. 127; United States v. Yount, 267 Fed. 861; VanDeman & Lewis Co. v. Rast, 214 Fed. 827; Little v. Tanner, 208 Fed. 605. "The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regulations." State ex rel. v. Kimmel, 256 Mo. 641; State v. Wilson, 232 S. W. 145; State ex rel. v. Railroad, 246 Mo. 514; McClung v. Pulitzer Pub. Co., 214 S. W. 197. (5) Those who are attempted to be subjected to the penal provisions of the Statute are determined by arbitrary selection wholly without regard to any difference between their delinquency or culpability and that of others whom the statute leaves untouched. This is such a denial of the equal protection of the laws as renders the statute invalid and unenforceable. Amer. Sugar Co. v. McFarland, 229 Fed. 287; Watson v. Maryland, 218 U. S. 173; Truax v. Corrigan, 42 Sup. Ct. Rep. 132. A mere arbitrary act, although exercised under the police power, cannot be sustained. Lawton v. Steel, 152 U. S. 133; Dobbins v. Los Angeles, 195 U. S. 223; Mo. Pac. Rd. v. Nebraska, 217 U. S. 196; Chicago Ry. v. Wisconsin, 238 U. S. 501. In order to satisfy the Fourteenth Amendment the State

law must be impartially administered and in the ordinary mode prescribed by law. Eldridge v. Trezevant, 160 U. S. 469; Hagar v. Reclamation Dist., 111 U. S. 701; Ochoa v. Hernandez, 230 U. S. 139. (6) The court erred in refusing to instruct the jury to find for defendant and erred in overruling defendants' motion in arrest of judgment, for the reason that Section 4217, Revised Statutes 1919, as construed by this court in its last controlling decision is in conflict with Section 8 of Article XI of the State Constitution, which provides that "the clear proceeds of all penalties and forfeitures . . . shall belong to and be securely invested and sacredly preserved in the several counties as a county public school fund." State v. Ry. Co., 253 Mo. 657; Skinner v. Railroad, 254 Mo. 492; State v. Clifford, 124 Mo. 498; State ex rel. v. Warner, 197 Mo. 658; State ex rel. v. Railroad, 89 Mo. 570.

*L. B. Gillihan, R. H. Musser, Platt Hubbell* and *George H. Hubbell* for respondent.

(1) The appellants were negligent. The deceased persons were in the exercise of ordinary care. The sole cause of the deaths and injury was the negligence of the appellants. Beckham v. Hines, 279 Fed. 241; Hines v. Hoover, 271 Fed. 645; Begart v. Payne, 274 Fed. 784; Payne v. Haubert, 277 Fed. 646; McGhee v. White, 66 Fed. 502; Flannelly v. Delaware & Hudson Co., 56 L. Ed. 1221; Baltimore & O. Railroad Co. v. Griffith, 40 L. Ed. 277; Richmond & Danville Railroad Co. v. Powers, 37 L. Ed. 642; Cont. Imp. Co. v. Stead, 24 L. Ed. 403; Ry. Co. v. Cunningham, 168 S. W. 431; Grafton v. Delano, 154 N. W. 1009; Railroad Co. v. McNary, 17 L. R. A. (N. S.) 226. At the time of the killing, the witness Claude Holland saw the Ford automobile, but he could not see the persons who were riding in the Ford automobile. And no one else saw the persons in the Ford automobile at the time of the killing. In this posture of affairs, the law presumes that the deceased persons were

in the exercise of reasonable and ordinary care. Riska v. Railroad, 180 Mo. 189; O. C. v. Reed, 33 L. R. A. (N. S.) 1115; Hovey v. Sanders, 174 S. W. 1029. (2) The three causes of action are properly united in the petition. R. S. 1919, sec. 1221; Phoenix Ins. Co. v. McEvony, 72 N. W. 957, 52 Neb. 566; Mayberry v. Ry. Co., 10 Am. & Eng. Ann. Cas. 754, 12 L. R. A. (N. S.) 675; 1 C. J. 1086; Kansas City Ry. Co. v. Spencer, 72 Miss. 491; Coy v. Railroad, 186 Mo. App. 412; Binicker v. Ry. Co., 83 Mo. 660; Savings Bank v. Tracey, 141 Mo. 258; Birmingham Ry. Co. v. Lintner, 109 Am. St. 40; 1 Ency. Pl. and Pr. 180; Coles v. Ill. Cent., 120 Ky. 686; Mobile & Ohio v. Matthews, 115 Tenn. 172. Besides, appellants waived all questions of pleading by answering over and going to trial. White v. Railroad, 202 Mo. 561; Hof v. Transit Co., 213 Mo. 465. (3) Section 4217, Revised Statutes 1919, is constitutional. Art. 14, Amd. U. S. Constitution; R. S. 1855, sec. 2, p. 647; R. S. 1865, sec. 2, p. 601; R. S. 1879, sec. 2121, p. 349; Laws 1885, pp. 153, 154; R. S. 1889, sec. 4425; R. S. 1899, sec. 2864; Laws 1905, pp. 135, 137; R. S. 1909, sec. 5425; Carroll v. Mo. Pac. Ry. Co., 88 Mo. 239, 57 Am. Rep. 382; Tiffany on Death by Wrongful Act (2 Ed.) sec. 31, pp. 35, 36; Boston Railroad Co. v. State, 32 N. H. 215; Schoolcraft v. Railroad Co., 14 L. R. A. 579, 92 Ky. 233; Chiles v. Drake, 74 Am. Dec. 406; Sherlock v. Alling, 23 L. Ed. 819, 93 U. S. 99; Laws 1875, p. 131; R. S. 1919, sec. 9948; Humes v. Mo. Pac., 82 Mo. 221, 115 U. S. 512, 6 Sup. Ct. Rep. 110; Leuders v. Railroad Co., 253 Mo. 97, 102; Young v. Iron Mt., 227 Mo. 317; Grier v. Ry. Co., 286 Mo. 536; Cooley's Const. Lim. (7 Ed.) pp. 830, 843; Mo. Constitution, art. 2, secs. 1-3; Mo. Constitution, art. 4, sec. 1; Hannis Taylor, sec. 383; 17 C. J. 1192; Davis v. Fla. Power Co., Ann. Cases 1914 B, 973; Atl. Railroad Co. v. Goldsboro, 232 U. S. 548; Iron Mt. v. Williams, 251 U. S. 63, 64 L. Ed. 139; Railroad Co. v. Anderson, 242 U. S. 283, 61 L. Ed. 302; Railway Co. v. Minn., 246 U. S. 434, 62 L. Ed. 817; Elec. Co. v. Sacramento, 251 U. S. 22,

64 L. Ed. 112; Levy Leasing Co. v. Siegel, 42 Sup. Ct. Rep. 290; Iron Mt. v. Arkansas, 240 U. S. 518, 60 L. Ed. 802; Vandalia Ry. Co. v. Pub. Ser. Co., 242 U. S. 255, 61 L. Ed. 276. (4) Sec. 4217, Revised Statutes 1919, does not violate Constitution of Missouri, art. XI, sec. 8. Barnett v. Railroad Co., 68 Mo. 64; Spealman v. Mo. Pac. Ry. Co., 71 Mo. 434; Humes v. Mo. Pac. Ry. Co., 82 Mo. 221. (5) Since the Rock Island is liable, the Burlington is liable for the negligence of the Rock Island. Markey v. Railroad, 185 Mo. 363; Dean v. Railroad, 199 Mo. 390; R. S. 1919, sec. 9879; Brown v. Railroad, 256 Mo. 532; Moorshead v. United Rys. Co., 203 Mo. 158; McCoy v. Ry. Co., 36 Mo. App. 452; Brown v. Ry. Co., 27 Mo. App. 400; Thomas v. West Jersey Railroad Co., 25 L. Ed. 950, 101 U. S. 71; Schwyart v. Barrett, 145 Mo. App. 332, 227 U. S. 184; Whiteaker v. Rock Island, 252 Mo. 438, 60 L. Ed. 360, 239 U. S. 427; State ex rel. v. Dearing, 244 Mo. 37; R. S. 1919, sec. 1160.

LINDSAY, C.—The plaintiff is an infant five years of age. Her father, Paul Shaffer, and her mother, Goldie Shaffer, were killed, and the plaintiff herself was injured, on the 10th day of August, 1921, when a Ford automobile in which they were riding was struck at the Fifth Street crossing in the town of Turney, in Clinton County, by a passenger train owned and operated by the defendant Chicago, Rock Island & Pacific Railway Company, but running upon tracks leased from defendant Chicago, Burlington & Quincy Railroad Company. The collision occurred at about two o'clock in the afternoon. The suit was brought in the Circuit Court of Davies County, and transferred to Clinton County. The plaintiff had a verdict for $10,000 upon the first count of her petition, for the death of her father; a like verdict upon the second count for the death of her mother; and a verdict for $2,000 upon the third count, for injuries sustained by plaintiff to her person. Judgment was entered accordingly, against both the companies, and

against the defendant Thomas Torpey, who was the engineer of the train which struck the automobile. For brevity the two companies will be referred to respectively as the Rock Island Company, and the Burlington Company.

Plaintiff's petition is long, but the three counts are alike in their allegations of facts and charges of negligence severally or concurrently committed by the defendants. They differ only in the particulars appropriate to the capacity in which plaintiff sued in each of the respective counts. Several of the issues tendered by the pleadings were eliminated in the submission of the case to the jury. An outline of the physical surroundings and circumstances is given preliminary to a statement of the issues brought here upon appeal.

Turney is an incorporated town of about two hundred inhabitants. Fifth Street is near the southern limits, and extends east and west, and is sixty feet wide. It is a much-traveled highway. It strikes the main-line tracks of the Burlington Company, on which the collision occurred, at a point about four hundred feet east of Sherman Street, which is a street running north and south. Between Sherman Street and the main-line track there is an ascent of thirteen feet and nine inches. There were three tracks at the crossing. The main-line track is on the east, and the two passing tracks to the west are parallel with the main track. At the time the automobile was driven upon the crossing there was a freight train of the Burlington Company standing upon the west passing track upon the north side of the crossing. The caboose of this train was two or three car-lengths north of the crossing. On the middle track there was a freight train of the Rock Island Company. This latter train a little while before had stood upon the crossing, but had been moved northward, leaving the crossing open so that the caboose at the time of the collision was a short distance north of the crossing. The train which struck the automobile was moving southward on the east or

main-line track.  It was a fast train, which did not stop
at Turney.  On this occasion it was late, and was running
at a speed of about fifty miles an hour.  Plaintiff's
father owned the automobile.  The party in the automo-
bile consisted of the plaintiff and her father and mother,
and a Mr. George Yountsey and his wife, and a son of the
Yountseys, a boy of seven.  The two men occupied the
front seat, with the boy between them, and the two wo-
men and plaintiff occupied the rear seat.  They all lived
in Daviess County and were at the time making a trip
to Colorado in the automobile.  They were unacquainted
with this crossing.  The evidence does not show which
one of the men was driving the automobile at the time it
was struck.  The automobile driven south on Sherman
Street, turned east at Fifth Street, and, proceeding along
Fifth Street, crossing the two passing tracks, and was
struck by the south-bound passenger train on the east
or main-line track.  Further details as to the movements
of the automobile and of the trains, and a more partic-
ular description of the crossing and its surroundings,
will be necessary in considering the issues upon the first
and second assignments of error.

The petition set forth the relation between the two
companies, ownership and operation of the property and
lines at Turney by the Burlington Company, and the
existence of a lease or contract between the two com-
panies whereby the Rock Island Company also operated
its trains over said tracks between Cameron and Kansas
City, Missouri.  It set out an ordinance of the town of
Turney regulating the running of engines and cars, and
prescribing the rules for the prevention of accidents at
crossings, and pleaded a violation thereof by both de-
fendant companies, and alleged a failure by both com-
panies to cut the grass and weeds on the west side of the
right of way whereby the view of persons approaching
the crossing from the west was partially obscured.  It
described the physical conditions at and near the cross-
ing, and the position of the two freight trains of the

respective companies on the passing tracks north of the crossing, as obscuring the view of the main track from persons approaching from the west, and alleged that the two freight trains upon the passing tracks were awaiting the coming of the passenger train upon the main track; that the action contemplated was that the train of the Rock Island Company upon the middle track should move northward as soon as the passenger train entered the Turney yards. It alleged that the respective conductors of the two freight trains, knowing this, permitted their trains to obstruct the view from the crossing of the coming passenger train, and that both companies and said conductors negligently failed to place any flagman or person at the crossing to warn travelers of the approach of the passenger train, and other contemplated train movements. The conductors of said two freight trains were made co-defendants. Further material allegations were that the passenger train was being run at an excessive and dangerous rate of speed, and that there was a failure either to sound the whistle or to ring the bell upon approaching the Fifth-Street crossing. These last-mentioned acts of alleged negligence were coupled with charges of the joint and concurrent acts of negligence heretofore indicated, that is, failure to install an electric bell or signal at the crossing as provided by the ordinance, failure to cut the weeds and grass north and west of the crossing, permitting the two freight trains to stand on the passing tracks close to the crossing, and the movement of the freight train of the Rock Island Company from a point over the crossing, northward, leaving the crossing open, and failure of the defendants and the conductors of the freight trains to give any warning of the approach of the passenger train.

Demurrers were filed by the Burlington Company and its co-defendant, the conductor of its freight train, upon the grounds that plaintiff had not legal capacity to sue; that several causes of action were improperly united; that there was a misjoinder of parties defendant; and that the petition failed to state facts sufficient

to constitute a cause of action.    These were overruled.
The answer of defendant Rock Island Company and its
co-defendant employees was a plea of contributory neg-
ligence on the part of plaintiff's father and mother, fol-
lowed by an averment that Section 4217, Revised Stat-
utes 1919, as applicable to the first and second counts of
the petition, in permitting the recovery of a penalty,
contravenes the Fourteenth Amendment to the Con-
stitution of the United States in that it deprives defend-
ants of their property without due process of law, and
an averment that said section is in conflict with Section
8 of Article XI of the Constitution of Missouri in that
it permits the recovery of a penalty by an individual.
There was a like answer by the Burlington Company and
its co-defendant employee, with the further averment
that there was a misjoinder of parties defendant, and
that they were neither necessary nor proper parties.
Each answer contained a general denial.

The defendant Burlington Company and its co-de-
fendant employee filed a motion to strike out of each
count of the petition all allegations concerning the ordi-
nance of the town of Turney, the failure to install an
electric bell, the failure to cut the grass and vegetation,
and the failure to warn of the approaching passenger
train, and certain other matters relating to the move-
ment of the freight trains.    These motions were over-
ruled, but these matters were eliminated upon the sub-
mission of the cause to the jury, and the case was dis-
missed as to defendant Deardorff, conductor of the Bur-
lington freight train, and as to defendant Guile, conduc-
tor of the Rock Island freight train.    There were also
motions to require plaintiff to elect upon which of the
three counts she would go to trial, which were overruled.
At the close of the evidence motions requiring an elec-
tion were again asked and refused, and peremptory in-
structions were asked and refused as to all three counts.

The court gave an instruction which told the jury
that if they found the defendant Rock Island was liable
and responsible to plaintiff for the death of her father,

and of her mother, and for personal injuries to the plaintiff herself, then the defendant Burlington Company, the lessor company, was equally liable and responsible with defendant, Rock Island Company.

An instruction was given upon each of the three counts, authorizing a verdict for plaintiff. Therein were set forth the acts of negligence upon which a verdict was authorized, founded upon the manner of operating the locomotive engine and train by defendant Torpey as the employee of the Rock Island Company. The instruction covering the first count, typical of the others, after reciting the preliminary conditions and the relation of defendant Torpey, continues:.

"And, if the jury further believe from the evidence that he was then and there negligently running and operating said locomotive engine and train at an unreasonable, excessive and negligent rate of speed, under all of the facts and circumstances mentioned in evidence; and, if the jury further believe that under all the facts and circumstances in evidence, reasonable and ordinary care for the safety of persons driving along Fifth Street and over Fifth Street railroad crossing, then and there required that the locomotive steam whistle on said locomotive engine be sounded at reasonable intervals between the elevator mentioned in evidence and Fifth Street railroad crossing; and, if the jury further believe from the evidence that defendant, Thomas Torpey, then and there negligently failed to sound said steam whistle anywhere between said elevator and said Fifth Street railroad crossing; and, if the jury further believe from the evidence that the bell on said locomotive engine was not rung, or caused to ring between said elevator and said Fifth Street railroad crossing; and, that the defendant, Thomas Torpey, then and there negligently failed to cause said bell to be rung anywhere between said points; and, if the jury further believe from the evidence that while said locmotive engine was being so run and operated, said locomotive engine struck said automobile and struck said Paul Shaffer, and that thereby, Paul

Shaffer was killed; and, if the jury further believe from the evidence that the running of said engine and train at an unreasonable, excessive and negligent rate of speed, without sounding the locomotive whistle and without ringing the bell thereof (if they were so run and operated) was a direct and approximate cause of the death of Paul Shaffer; and, if the jury further believe from the evidence that Paul Shaffer was not guilty of contributory negligence, as herein defined, directly contributing to produce said collision and death, then, the plaintiff is entitled to recover, and the verdict of the jury must be in favor of the plaintiff, and against the defendants, Thomas Torpey, Chicago, Rock Island & Pacific Railway Company, and Chicago, Burlington & Quincy Railroad Company.''

The defendant Rock Island Company and Thomas Torpey first assign as error the refusal to give their peremptory instruction as to the first and second counts, for the reason that plaintiff's intestates were, under the undisputed evidence, guilty of contributory negligence as a matter of law, and, second, that plaintiff's intestates were engaged in a joint enterprise of business and pleasure and the negligence of the driver will be imputed to the other members of the joint enterprise. They assign as error the overruling of their joint demurrer and motion to elect, for the reason that several distinct causes of action were improperly united in plaintiff's petition, and further assign as error the refusal of their offered peremptory instruction and the overruling of their motion in arrest, for the reason that Section 4217, Revised Statutes 1919, under which plaintiff recovered, is in conflict with the Fourteenth Amendment to the Constitution of the United States, and also is in conflict with Section 8 of Article XI of the Constitution of the State of Missouri. The defendants just mentioned have withdrawn their assignment of error originally made for refusal to give their instruction numbered 2, by which they sought to have the jury instructed that if defendant

Thomas Torpey "sounded the whistle of his engine eighty rods from the crossing in question and rang the bell upon his engine while approaching said crossing then the plaintiff cannot recover." They have also withdrawn the assignment that error was committed in instructing the jury as to the failure to sound the whistle and ring the bell as set forth in the instructions authorizing a recovery, and heretofore shown in the quotation from plaintiff's instruction covering the first count. The defendant, Burlington Company, adopting the assignment of error of its co-defendants, has also assigned as error failure to give its separate peremptory instructions offered upon each count of the petition, and the giving of plaintiff's instruction numbered 1 above referred to, which told the jury that if the defendant Rock Island Company was liable and responsible to plaintiff then the Burlington Company was equally liable and responsible.

The contention that plaintiff's father and mother were guilty of contributory negligence as a matter of law requires an examination of the evidence. Many witnesses were heard, and many photographs were put in evidence as showing the surroundings and the circumstances attending the fatal collision, but the controversy as to the facts, both here and upon the trial, is confined chiefly to three subjects—the distances at which the cabooses of the two freight trains stood north of the crossing, and particularly the Rock Island train upon the middle track, the number of times the whistle of the passenger train engine was sounded and whether the bell was rung, and, in a lesser degree, the speed of the automobile as it approached the crossing. A detailed statement or the review of the testimony on these matters would be of an undue length. The weight of the evidence tends to show that the caboose of the Burlington train on the west track stood but a short distance north of the crossing. Witnesses estimated the distance as seventy-five feet, or, as two or three car-lengths, or at two rail-lengths. It was a long train. The track upon which it stood was lower than the middle track and the main

track. The middle track was ten inches lower than the main track, and the west track a foot and a half lower than the main track.

The Rock Island freight train was a very long train, longer than the Burlington train, and on a track about eight inches higher than that on which the Burlington train stood. This Rock Island train had come in upon the middle track at a time not long before, and had for a time blocked the Fifth Street crossing. There was testimony that as it then was, two or three cars stood south of the center of the crossing. Later, it was pulled north so as to open the crossing, and again stopped. This was done almost immediately before the automobile came up, but the exact interval of time is not fixed. There is testimony that it pulled north five or six car-lengths, and was stopped at a point where the caboose was two or three car-lengths north of the crossing.

The defendant Torpey, engineer of the passenger train, testified that the end of the caboose of the Rock Island train was two or three car-lengths north of the crossing, and that by the reason of its position and being on a higher track than the Burlington train, he did not see the latter train as his engine went by, and he testified that he could not have seen the people in the automobile until he "got up close to the crossing, up by the end of the caboose, in two, three or four car-lengths of the crossing." And he did not in fact see the automobile at all before it was struck by his engine. There was less testimony as to the position of the Rock Island train than there was as to the position or distance of the Burlington train. Defendants urge that the Rock Island train was much further north, and its caboose was about four hundred feet north of the crossing at the time the automobile was struck, and direct special attention to the testimony of a witness who was at the depot in Turney at the time of the collision. The depot is about nine hundred feet north of the crossing. This witness, being at the depot and becoming aware that a collision had occurred at the Fifth Street crossing, ran south down

the tracks. As he did so, the Rock Island train was moving northward. On that point he testified:

"Q. And you met the caboose of the Rock Island? A. I did.

"Q. And half way between the depot and Fifth Street? A. I would think about half way—somewhere along there.

"Q. And which way was that caboose moving at that time? A. Moving east, or north, which ever way they would want to call it. Some call it east, and some north."

This testimony does not support the contention here made by defendants. The witness was telling of the position of a moving train after the automobile was struck, and not of the position of that train as it stood at the time the automobile was struck.

The three tracks were of standard width, four feet and eight inches. The space between the west track and the middle track was eight feet and four inches, and there was the same space between the middle track and the east or main-line track; so that the distance from the west rail of the west track to the east rail of the main track was approximately thirty-one feet. The testimony shows conclusively that the passenger train which struck the automobile was running at a high rate of speed. The lowest estimate was forty-five miles an hour, and the highest fifty-five miles. That it was running at a speed approximately fifty miles an hour cannot be questioned. When the engineer heard the impact of the automobile he shut off steam and applied the brakes and the train ran almost one-half of a mile beyond the crossing before it came to a stop. The automobile was found about one hundred feet from where it was struck.

There was much testimony and some conflict therein concerning the sounding of the whistle and ringing of the bell of the passenger train. There is no crossing between Fifth Street and the depot, nine hundred feet north of Fifth Street. North of the depot, and distant

Shaffer v. Rock Island Railway Co.

about 1320 feet, or eighty rods, from the crossing, stands the elevator mentioned in the instruction above quoted. North of this, and distant about 1900 feet from Fifth Street, is the Center Street crossing, near the northern limits of the town. The whistle for the station was sounded at a point probably one-half a mile north of the Center Street crossing. The testimony of plaintiff's witnesses was to the effect that the whistle was not sounded again before reaching Fifth Street, and that the bell was not rung at all.

Defendant Torpey testified that, in addition to sounding the whistle for the station, he also sounded two long and two short blasts for each of the three crossings, Center Street, Second Street and Fifth Street. But in this particular he was contradicted by all of plaintiff's witnesses and by defendant's witnesses, and defendant's witnesses who testified as to hearing other than the whistle for the station were indefinite as to number or place. There is no testimony from any witness that the whistle was sounded at any time south of the depot. Inquiry as to the ringing of the bell was made of many witnesses. The testimony from plaintiff's witnesses was that the bell was not rung, and many of defendant's witnesses, including some of the employees on the trains mentioned, testified that they did not hear the bell. The weight of the evidence upon this point was in favor of plaintiff.

It is necessary next to consider the movements of the automobile in the surroundings and under the conditions outlined. It was driven through the business section of Turney, lying to the west and north of the Fifth Street crossing. It was stopped there while one of the two men put water in the radiator. Its **Contributory Negligence.** course from that time was observed by a witness who was standing in front of a store about one thousand feet distant on a direct line, from the Fifth Street crossing. He was the only witness who saw it go upon the crossing. He knew the Rock Island passenger train was a few minutes overdue and antici-

pated danger. The automobile moving southward on Sherman Street crossed Fifth Street and went on for about one hundred feet, then stopped and returned to Fifth Street, turned east and proceeded thence without stopping up the grade along Fifth Street, to and upon the crossing. The testimony of this witness, and another who saw it a part of the way up Fifth Street, was that it was moving at an ordinary or moderate rate of speed. The witness who saw it go upon the crossing testified:

"Q. And it was going at about what rate of speed? A. Well, running along, I would judge, at a moderate rate of speed, just like anyone would drive up to a crossing, and up a slant that way.

"Q. Could you give some idea of the miles an hour it was driving up there? A. Oh, I could, but it wasn't running fast. It was just running up that way."

The other testimony of this witness, and of two other witnesses who saw the automobile as it passed toward Fifth Street, was to the effect that it was not running fast, but at probably not in excess of ten miles an hour. The testimony above quoted is the most definite that can be given as to its speed as it moved up Fifth Street. The single eye-witness above referred to testified that the automobile did not "halt" before going upon the crossing.

The crossing is not in the center of Fifth Street, but is south of the center, so that the traveler approaching from the west, before driving upon the crossing, must bear toward the southeast. The railroad tracks at that point run from southeastward to the northwestward, and the angle on the north side of the crossing in approaching the tracks from the west, on the north or left side of the driver, is one of about seventy degrees. The testimony shows that the roadway at a point fifty feet west of the crossing is three feet lower than the main track. When the front of the automobile reached the west rail of the west track it was twenty-six feet and nine inches from the west rail of the main track. Numerous

tests were made to ascertain how far a person standing at varying points on the crossing could see the main track to the north, when the cars were standing at varying distances upon the middle track north of the crossing. The civil engineer of the Rock Island Company testified that, with a caboose or obstruction on the middle track, seventy-two feet north of the crossing, and standing at a point fifteen feet west of the main-line track, he could see north up the main-line track one hundred nine feet and seven inches, and that standing in the same position, with the caboose or obstruction at a point one hundred eight feet north of the crossing, he could see north up the main-line track one hundred sixty-two feet. At twenty feet west of the rail of the main line he could see ninety-six feet with the obstruction placed at seventy-two feet from the crossing, and at forty feet from the main line he could see eighty-two feet. He also made other observations with the obstruction on the middle track at a distance of one hundred eight feet north of the crossing from points at varying distances from the main-line track. With the obstruction thus, at eight feet from the main-line track he could see three hundred ninety-one feet, at a ten-foot point he could see two hundred thirty-four feet, and he made and testified to observations at other distances, and with the obstruction farther north of the crossing. The direct testimony was that the condition of the crossing was such as required automobiles to be driven slowly over it to avoid bumps, since in driving east each track was higher than the preceding one. In the situation thus outlined the automobile was driven upon the crossing which a very little time before had been left open by the movement of the Rock Island freight train, and according to the substantial evidence no bell was being rung, nor whistle was sounded within eighty rods, and, according to much testimony not otherwise than at the whistling point for the station much beyond the northern limits of the town. The train, if running at a speed of forty-five miles an hour was

300 Mo.—32

moving at the rate of sixty-six feet a second and if running at fifty miles an hour was moving toward the crossing at the rate of seventy-three feet a second. The persons in the automobile were residents of another county and not acquainted with the crossing. The adults are all dead and the only eye-witness was too far away to make any observation of their demeanor. His deepest impression was that the people in the automobile did not see nor hear the train which he, from his position one thousand feet away to the northwest, knew was rushing along behind the two freight trains toward the crossing. In view of the circumstances shown by the evidence in this case it cannot be held that the occupants of the automobile were guilty of contributory negligence as a matter of law. The court submitted the issue of contributory negligence by a proper instruction, and there was abundant evidence to sustain the verdict. The court in this case excluded from consideration the ordinance of the town of Turney limiting the speed of trains to fifteen miles an hour. The right of the defendants operating the train to run through the town without stopping is not in issue, nor the right to run at a speed exceeding fifteen miles an hour. The issue is as to the care exercised as adapted to the circumstances, in view of the rights of persons using the public highways, and the correlative care to be exercised by such persons. The automobile did not "halt" before going upon the crossing, but this is not conclusive evidence of contributory negligence.

In Monroe v. Chicago & Alton Railroad, 280 Mo. l. c. 490, this court said: "In this State it is the rule that it is the duty of one about to cross a railroad track to look and listen," and sometimes to stop in order the better to see and hear, yet it is not always incumbent upon him to stop for that purpose; whether he should do so in a given case depends on the circumstances, and if it is doubtful the jury are to judge of it."

In this case it was for the jury to say whether the defendants operating the train were running it at an

excessive and dangerous rate of speed, and were doing so without giving timely warning of its approach, and if so, whether the persons in the automobile were in the exercise of ordinary care in attempting to pass over the crossing as they did.  Under the evidence the jury were warranted in finding that the occupants of the automobile could reasonably presume the crossing was safely open, that no warning whistle or bell was sounded to advise them of danger, and that by reason of the obstruction and the great speed of the train, no effort of theirs after the train came within sight could avail to save them.  If the driver from his position in the automobile at a distance of fifteen feet from the main-line track had seen the train at a distance of one hundred nine feet at the very instant it appeared from beyond the Rock Island caboose standing seventy-five feet north of the crossing, he would have had a space of about twelve feet and an interval of time of one and one-half seconds in which to operate the automobile so as to avoid a collision, and if the obstruction was one hundred eight feet north of the crossing and he saw the train the instant it appeared, one hundred sixty-two feet away from beyond an obstruction one hundred eight feet distant, he would have had the same space in distance as above, and about two and one-fourth seconds of time in which to avoid a collision.  This assignment of error must be ruled against the appellant.  [Kennayde v. Pacific Railroad Co., 45 Mo. 255; Tabor v. Railroad Co., 46 Mo. 353; Baker v. Railroad, 147 Mo. 140; McDaniel v. Hines, 239 S. W. 471; Moberly v. Railroad Co., 17 Mo. App. 518; Beckham v. Hines, 279 Fed. 241; Hines v. Hoover, 271 Fed. 645; Begert v. Payne, 274 Fed. 784;  Payne v. Haubert, 277 Fed. 646; Flannelly v. Railroad, 225 U. S. 601; Railroad v. Griffith, 159 U. S. 603; Cleveland Railroad Co. v. Crawford, 24 Ohio St. 631.]  What has been said disposes also of the second assignment of error applicable to the second count of the petition founded upon the death of the plaintiff's mother.

The next assignment of error to be considered consists of the claim that there is a misjoinder of causes of action. It is urged that "plaintiff seeks to recover damages for *injuries to her person* under the third count of her petition, under the third class of causes of action which may be united in the same petition under Section 1221, Revised Statutes 1919, and in the same petition seeks to recover in a representative capacity for a penalty under the first and second counts of her petition, which is imposed by *operation of law*, under the seventh class of causes of action, which may be united in the same petition," and that the causes of action thus united in the petition not belonging to the class, it was error to overrule defendant's demurrer and motion to elect.

*Misjoinder of Causes.*

That the third count of plaintiff's petition is within the definition contained in the third class mentioned in Section 1221 may not be doubted. But, it is clear that the first and second counts of the petition do not fall within the seventh class. The seventh class in respect of a plaintiff refers to a person who sues in "some representative or fiduciary capacity." But, the plaintiff here does not sue in these two counts in a representative or fiduciary capacity—as an administrator might sue for the death of his intestate, under Section 4217.

The plaintiff sues in her own right, directly. She is the immediate beneficiary under Section 4217. The term "representative capacity" is a well-understood term, and only applies to a party acting for and in behalf of some party or estate, and not for himself personally. [Van Brunt & Davis Co. v. Harrigan, 65 N. W. (S. D.) 421, 422.] The plaintiff here represents no one but herself in suing for the penalties. Section 1221 after enumerating seven classes, closes with the provision that the cause of action which it is permitted to unite "must all belong to one of these classes and must affect all the parties to the action." The first and second counts founded upon the death of plaintiff's father and her mother, respectively, manifestly fall into one and the

same class. The cause of action stated in the third count arises out of the same transaction. The first class embraces cases wherein the several causes of action permitted to be united arise out of the "same transaction or transactions connected with the same subject of action."

The alleged negligence of the defendants produced the results on account of which plaintiff sues, in each of the several counts. Each is founded upon a tort which produced three several results, upon each of which several results plaintiff has a right of action. And these may be united. This must be so if effect is to be given to the words used in the statute. "The word 'transaction' as used in Revised Laws 1905, Section 4154, providing for the uniting of causes of action arising out of the same transaction, embraces something more than contractual relations. It includes any occurrences or affairs the result of which vests in a party the right to maintain an action, whether the occurrences be in the nature of a tort or otherwise." [Mayberry v. Northern Pacific Ry. Co., 100 Minn. 79, and to the same effect are the definitions in Scarborough v. Smith, 18 Kan. 399, 406; Schenck v. Sterling E. C. Co., 151 Wis. l. c. 271; McArthur v. Moffet, 143 Wis. 564; Lamming v. Galusha, 135 N. Y. 239; Rudolph v. Holmes, 78 So. (Ala.) 839.]

Besides, after the defendants' demurrer was overruled they filed their answers. Afterward, before the beginning of plaintiff's testimony, they filed motions to

Waiver.

require the plaintiff to elect, which were overruled, and the case went to trial. Such action as has been generally held constitutes a waiver of the objection of misjoinder of causes of action or of misjoinder of parties. [White v. Railroad Co., 202 Mo. 539; Hof v. Transit Co., 213 Mo. 445, 465.] In Wolz v. Venard, 253 Mo. 67, the defendants had demurred on those grounds and others, and failing therein had answered. It was said at page 84: "When appellants demurred on those grounds and refused to stand on their demurrer, but pleaded over, taking issue on the facts, they waived those grounds effectually."

The next assignment of error to be noticed is that Section 4217, Revised Statutes 1919, as construed by this court in Grier v. Kansas City, Clay County & St. Joseph Ry. Co., 286 Mo. 523, is in conflict with the Fourteenth Amendment to the Constitution of the United States. This, upon the ground that in the Grier Case the statute was construed as "strictly and primarily penal," that the forfeiture therein provided is to be enforced as punishment, and the "amount thereof not limited or controlled by the rules of law that govern the assessment of compensatory damages." It is said that thereby the Legislature has "selected public carriers and their servants as objects of punishment for death caused by an ordinary act of negligence, when other classes of corporations and individuals similarly situated and guilty of like delinquency are not punished."

Constitutional Statute.

The construction placed upon the statute in the Grier Case does not present a new issue. The statute had theretofore been construed as penal in character. As it stood for fifty years prior to 1905, the provision was that the negligent party or parties "shall forfeit and pay for every person or passenger so dying the sum of five thousand dollars." The statute with this provision was held constitutional in Carroll v. Mo. Pac. Ry. Co., 88 Mo. 239, upon reasons therein given and upon the authority of Humes v. Mo. Pac. Ry. Co., 82 Mo. 221, and Barnett v. Railroad, 68 Mo. 56, and Meyers v. Union Trust Co., 82 Mo. 237, wherein like questions were in issue. The decision in the Humes Case had then recently been affirmed by the Supreme Court of the United States. [Mo. Pac. Ry. Co. v. Humes, 115 U. S. 512.] The statute under consideration was then penal. By the Amendment of 1905 it was provided that the negligent party, or parties, "shall forfeit and pay as a penalty, for every person or passengers so dying, the sum of not less than two thousand dollars and not exceeding ten thousand dollars in the discretion of the jury." In

the Grier Case it was held that the words "as a penalty" added nothing to the penal character of the statute. It was said in that case, 286 Mo. l. c. 539: "The addition is but a repetition of the meaning conveyed in the words 'forfeit and pay,' and the very fact that it is a repetition (presumably unnecessary) and was incorporated in the statute for the first time with and as a part of the amendment makes plain beyond controversy that the lawmakers intended that the entire recovery should continue to be a penalty in the same respect that it had theretofore been." In Young v. Ry. Co., 227 Mo. 307, it was held that the statute in question had always been penal; that the addition of the words "as a penalty" had added nothing to its meaning and effect; that as a penal statute it was constitutional; and that the provision permitting the jury to fix the penalty between a minimum and a maximum limit was not violative of the Federal Constitution.

There was in the Young Case no consideration of this statute as being otherwise than penal in character. The decision in that case holding that this statute in its penal aspect and in the mode of assessment of the penalty was not violative of the Federal Constitution, has been followed by this court. Decisions suggesting or holding that this statute is in part remedial or compensatory, as in Murphy v. Railroad, 228 Mo. 56, and Boyd v. Railroad, 236 Mo. 54, in no way affect the holding in the Young Case, and the holdings in the early cases cited, sustaining the constitutionality of this statute and of like statutes in their penal character. In so holding they recognized that this statute is primarily a penal statute, and in that respect is not violative of the Federal Constitution. And this more fully appears in the decision in the second hearing of the Boyd Case, 249 Mo. 110, and the decision in Johnson v. Ry. Co., 270 Mo. 418, 428. Finally, in the Grier Case, upon the motion for a rehearing, this court had before it the constitutional questions here in issue. The *Per Curiam* opinion overruling the motion said:

"The claim made by appellant in its brief and upon oral argument that Section 5425, Revised Statutes 1909, as construed by this court in its opinion, contravenes the Fourteenth Amendment of the United States Constitution and deprives said appellant of the equal protection of the laws and deprives it of due process of law within the meaning of said amendment, was fully considered by the court and denied."

The Grier Case was taken to the Supreme Court of the United States upon writ of error. Since the oral argument of the case at bar there have been filed, by permission, copies of the abstract of the record filed in that case in the Supreme Court of the United States and of the motion to dismiss and of the briefs of the respective counsel, and other documents tending to show the grounds upon which that case was there disposed of. It is the contention of counsel for appellant in this case that the Grier Case was disposed of upon the motion to dismiss and because no Federal question was presented by the record, and without consideration of the opinion of this court above quoted; while counsel for the respondent here contend that the decision of this court was affirmed, and that the affirmance took into consideration the questions mentioned in said opinion. A discussion of the details of these opposing contentions would be long and does not seem warranted here. The *Per Curiam* opinion of this court was before the Supreme Court of the United States, and we should assume that it was considered. The memorandum decision of this court in the Grier Case, 42 Sup. Ct. Rep. 382, is expressed as follows: "Judgment affirmed with costs." This will be construed as an affirmance of the decision of this court, and as taking into consideration said *Per Curiam* opinion. The constitutionality of Section 4217 in its present form, and as construed in the Grier Case and other cases cited, must be regarded as settled.

It is next insisted that Section 4217, Revised Statutes 1919, as construed in the Grier Case, is in conflict with

Section 8 of Article 11 of the State Constitution, which
provides that "the clear proceeds of all pen-
**Penalties:** alties and forfeitures . . . shall belong
**Payable to**
**School Fund.** to and be securely invested and sacredly pre-
served in the several counties as a county pub-
lic school fund."

In Barnett v. Atlantic & Pac. Railroad Co., 68 Mo.
56, which was a suit under the double-damage act for
live stock killed through failure to maintain fences as
required by law, it was held that the provision of the
statute allowing double damages to be recovered was
a penal statute. The provision was sustained as, and
only because it was penal. The provision giving the
penalty to the injured party was sustained as not being
in conflict with the constitutional provision above men-
tioned. The constitutional provision was held to refer
"to penalties accruing to the public, and not to penalties
recovered by private persons for their own use." The
distinction between a penalty prescribed for violation of
a private right and recovered by the person injured,
and a penalty prescribed as punishment for a public
wrong was recognized. The distinction was recognized
in Humes v. Railroad, 82 Mo. 221; Spealman v. Mo. Pac.
Ry. Co., 71 Mo. 434; State v. St. Louis, I. M. & S. Ry.
Co., 253 Mo. 642, and in many other cases where the sum
sued for was a penalty. The whole subject was re-
viewed in State ex rel. v. Warner, 197 Mo. 650. The
classes of penalties and their relation to the above con-
stitutional provision were stated by LAMM, J., at page
664: "(a) Where penal statutes are merely leveled
at a violation of private rights, and a private person or
class of persons is nominated therein as entitled to sue
for and recover penalties arising from the violation of
such statutes for their own use, then such penal laws
are not of the character of penal laws referred to in
Section 8 of Article 11 of the Constitution, and the pen-
alties provided in such laws are not devoted by the Con-
stitution itself to the public school fund." The penalty

provided by Section 4217 is within this class, and this assignment is ruled against appellant.

Counsel for defendant Burlington Company insist that there can be no recovery against that company under the petition. It is urged that the plaintiff did not seek to hold the Burlington Company as the leasing company, but upon charges of negligence committed severally, or concurrently with the other defendants. The court by instruction numbered 1 for plaintiff did not place the liability of the Burlington Company upon any act of negligence of that company, but as the lessor company made its liability contingent upon a finding that the Rock Island Company was liable. The giving of this instruction is assigned as error, as not being within the pleadings. The petition after stating the corporate character of the two companies, the ownership of the tracks at Turney by the Burlington Company and other appropriate descriptive matters, continues:

*Liability of Lessor.*

"At all times herein mentioned there has been, and now is, a contract, lease and trackage right between defendant Chicago, Rock Island & Pacific Railway Company and defendant Chicago, Burlington & Quincy Railroad Company, under the provisions of which contract, lease and trackage right said first named defendant has run and operated and now runs and operates its trains, cars and locomotives over said tracks of the defendant Chicago, Burlington & Quincy Railroad Company from Cameron, Missouri, to Harlem and Kansas City, Missouri.

"At all times herein mentioned both of said corporate defendants ran and operated, and now run and operate their trains, engines and cars over said tracks of defendant Chicago, Burlington & Quincy Railroad Company through the town of Turney, in Clinton County, Missouri."

The lease was introduced in evidence and Articles 1, 2, 5 and 6 thereof are set forth in the record. In of-

fering the entire lease the plaintiff specifically directed attention to the articles mentioned. Article 1 contains the grant of the use of its tracks by the Burlington Company to the Rock Island Company. The other articles set out in the abstract deal chiefly with definitions as to who were or were not to be deemed co-employees of the two companies. It is urged that plaintiff was seeking to recover against the Burlington Company upon the ground of its negligence only, or the negligence of employees who were joint employees of the two companies; that the plaintiff did not seek to hold the Burlington Company upon its statutory liability as the lessor company, and that the prayer of the petition did not ask that the Burlington Company be held liable as the lessor. These points are not well taken. The petition in each of the several counts asked for judgment against the defendants. This necessarily related to each and all of the defendants and to the grounds of liability stated. It was not necessary to ask specifically for judgment against the Burlington Company, nor in the prayer specify the ground or grounds upon which judgment was asked. The petition sufficiently pleaded the lease, and it was admitted in evidence showing the relation between the two companies as a basis of liability of the Burlington Company for the negligence of the Rock Island Company, under the provisions of Section 9879, Revised Statutes 1919, "the same as if it operated the road itself." That section has been before this court many times, and in all of them its provisions have been sustained as a proper exercise of the police power of the State. [Fleming v. Railroads, 263 Mo. 180; Brown v. Railroad, 256 Mo. 522; Dean v. Railroad, 199 Mo. 386; Markey v. Railroad, 185 Mo. 348.] Under Section 1160, Revised Statutes 1919, the plaintiff as seeking one satisfaction could join the defendants in a single suit. [State ex rel. v. Dearing, 244 Mo. 1. c. 37; Whiteaker v. Railroad, 252 Mo. 1. c. 450; Moorshead v. United Rys. Co., 203 Mo. 1. c. 158; Schwyhart v. Barrett, 145 Mo. App. 1. c. 344, 227 U. S. 184.]

Counsel for the Burlington Company insist that since Section 4217 is construed to be a penal statute in the Grier Case, and other cases, that company cannot be held liable. It is urged that Section 9880, Revised Statutes 1919, makes the owning company liable only for compensatory damages, not for punishment. Section 9880 provides that the owning company "shall remain liable for all acts, debts, claims, demands, judgments and liabilities of the lessee . . . the same as if it (the lessor) operated the road, or such part thereof itself." And by the same section the owning company "may sue and be sued in all cases and for the same causes, and in like manner, as if operating its own road." Sections 4217 and 9880 are to be construed together, in so far as they deal with the same subject. So construed it cannot be held that the provisions of Section 9880 do not include civil liability for penalty accruing under Section 4217, grounded upon negligence, and recoverable in a civil action.

*Penalty as Well as Compensation.*

For the reasons foregoing the judgment should be affirmed. It is so ordered. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is hereby adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* not sitting.