WILLIAM F. NIEHAUS AND CARRIE NIEHAUS, (PLAINTIFFS) RESPONDENTS, v. JOSEPH GREENSPON'S SON PIPE CORPORATION. (DEFENDANT) APPELLANT.—164 S. W. (2d) 180.

St. Louis Court of Appeals. Opinion filed July 7, 1942.

114

*Ben L. Shifrin, Herman Willer,* and *Taylor, Mayer, Shifrin & Willer* for appellant.

*Hall & Dame* and *L. J. Brooks, Jr.* for respondents.

BENNICK, C.—This is an action under the Fair Labor Standards Act of 1938 (29 U. S. C. A., secs. 201-219).

The plaintiffs are William F. Niehaus and Carrie Niehaus, his wife, who sue as former employees of defendant, Joseph Greenspon's

Son Pipe Corporation, to recover unpaid minimum wages and over-time compensation, liquidated damages, and a reasonable attorney's fee, all as provided by the act. Though the plaintiffs have joined in the action, each purports to assert his or her own individual right of recovery; and the case originates in the Circuit Court of the City of St. Louis as a court of competent jurisdiction in which an action to establish the employer's civil liability under the act may be maintained. [29 U. S. C. A., sec. 216.]

Defendant, whose chief office and principal place of business is in National City, Illinois, is a concern engaged in fabricating pipe of the type used in water lines and gas and oil wells. Some new pipe is sold, but for the most part the company's transactions involve old pipe, which is purchased outside and then resold and shipped out to various parts of the country after being cleaned and reconditioned. It was shown that some three-fourths of the company's products are shipped outside the State of Illinois; and indeed it was expressly admitted by defendant that it is engaged in interstate commerce and in the manufacture of goods for interstate commerce.

Plaintiff William F. Niehaus was employed as night watchman at defendant's plant, while his wife, Carrie Niehaus, the other plaintiff in the case, claims to have been employed as janitress or cleaning woman in and about the office.

The act provides that every employer shall pay to each of his employees "who is engaged in commerce or in the production of goods for commerce" a wage not less than 25 cents an hour during the first year from the effective date of the act (29 U. S. C. A., sec. 206), and that no employer shall, except as otherwise provided, employ any of his employees "who is engaged in commerce or in the production of goods for commerce" for a work week longer than 44 hours during the first year from the effective date of the act, unless such employee receives compensation for his employment in excess of 44 hours at a rate not less than one and one-half times the regular rate at which he is employed. [29 U. S. C. A., sec. 207.]

The term "commerce," as used in the act, is defined to mean "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." [29 U. S. C. A., sec. 203.] In the same section of definitions, it is further declared that for the purposes of the act "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The petition alleged that defendant and both plaintiffs were, at all times involved in the proceeding, engaged in commerce and in the production of goods for commerce within the application of the act.

The respective claims of the plaintiffs cover the period from October 24, 1938, when the act took effect, until July 28, 1939, all within the first year from the effective date of the act.

In brief, the claim of plaintiff William F. Niehaus is for the unpaid balance allegedly due him after deducting the compensation actually paid him for such period from the total amount he was entitled to receive at the statutory minimum wage of 25 cents an hour with time and a half for the hours employed in excess of 44 hours a week. The claim of Carrie Niehaus, on the other hand, is for the whole amount which she was allegedly entitled to receive for such period at the statutory minimum wage of 25 cents an hour with time and a half for the hours employed in excess of 44 hours a week, of which amount nothing has been paid.

The act provides (29 U. S. C. A., sec. 216) that in an action to enforce the employer's civil liability for violation of the act, the employee shall recover, not only the amount of his unpaid minimum wages and overtime compensation as the case may be, but also "an additional equal amount as liquidated damages." It is further provided that the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant.

Availing themselves of such provisions, plaintiffs' prayer in the case at bar was that they recover the aggregate of the respective amounts of wages allegedly due them, with an additional equal amount as liquidated damages, and that they be allowed a reasonable attorney's fee, together with the costs of the action.

For its first pleading in the case, defendant demurred to the petition upon the ground, among others, that there was a misjoinder both of parties plaintiff and of causes of action. The demurrer was overruled by the court, whereupon defendant, instead of standing upon the demurrer and permitting judgment to go against it, filed a separate answer to the petition with respect to each of the parties plaintiff.

By way of answer to the cause of action asserted by plaintiff William F. Niehaus, defendant denied that such plaintiff had been engaged in commerce or in production of goods for commerce within the application of the act so as to have been subject to or covered by its provisions. Further answering, defendant denied that plaintiff William F. Niehaus was entitled to the compensation claimed in his petition, but alleged that even if he had been subject to the provisions of the act, he had been paid in full for all the compensation he was entitled to receive.

As for the cause of action asserted by plaintiff Carrie Niehaus, defendant denied that she had ever been employed by it in interstate commerce, or, in fact, in any capacity whatever, and denied that it was indebted to her in any sum whatever.

The case was tried before the court alone, and resulted in a finding that plaintiff William F. Niehaus was entitled to recover the amount of $365.10 as unpaid minimum wages and overtime compensation, together with an equal amount as liquidated damages; and that plaintiff Carrie Niehaus was entitled to recover the amount of $588 as unpaid minimum wages and overtime compensation, together with an equal amount as liquidated damages. The attorney's fee was fixed at $750, of which $300 was found to be due on account of services rendered to plaintiff William F. Niehaus, and $450 due on account of services rendered to plaintiff Carrie Niehaus. The court thereupon ordered and adjudged that plaintiff William F. Niehaus have judgment against defendant in the amount of $1,030.20 (twice $365.10, plus $300); that plaintiff Carrie Niehaus have judgment in the amount of $1,626 (twice $588, plus $450); and that both plaintiffs have judgment for costs.

Following the entry on such judgment, defendant's appeal to this court has been perfected in the usual course.

The first, and what might well have been a very serious, question in the case is whether the lower court committed error in overruling the demurrer to the petition upon the ground of misjoinder both of parties plaintiff and of causes of action.

There could, of course, be no room for controversy about the fact of a misjoinder both of parties plaintiff and of causes of action if local laws and rules of procedure are to be followed in the prosecution, in the local courts, of causes of action arising under the federal act. Here there were unquestionably two subjects of controversy presented for adjudication and two primary rights sought to be enforced in a single petition, the one, the cause of action of plaintiff William F. Niehaus, and the other, the cause of action of his wife, Carrie Niehaus. While certain, but by no means all, of the issues in the two causes were identical, each cause of action was entirely separate and distinct from the other; and separate amounts of recovery were necessarily sought, thereby requiring what in effect constitutes two judgments in a single action. Neither cause of action affected both of the plaintiffs nor arose out of the same transaction; and under local laws and practice, not only were such two causes of action not to be commingled as though but a single cause of action were involved, but for lack of identity of parties and rights, they could not even have been stated in separate counts of the same petition. [Repetto v. Walton, 313 Mo. 182, 281 S. W. 411; Doerr-Engel Oil & Supply Co. v. Tide Water Oil Co., 342 Mo. 1141, 119 S. W. (2d) 402; Belt v. St. Louis, I. M. & S. Ry. Co. (Mo. App.), 190 S. W. 1002; Adams v. Stockton (Mo. App.), 133 S. W. (2d) 687.]

As a matter of fact, plaintiffs, in bringing the action as they do, have no misgivings about their lack of adherence to the requirements of local laws and rules of procedure, but insist that the right to

join in the instant case is accorded them by the provision of the act (29 U. S. C. A., sec. 216) that "action to recover such liability [the employer's liability for unpaid minimum wages, overtime compensation, and liquidated damages] may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

Fairly interpreted, it would seem that all that this language undertakes to do is to make provision (in so far as may be) for class suits in cases for the enforcement of the employer's civil liability under the act; or, in other words, to provide for one lawsuit in which the court, at the instance of one or more employees, may adjudicate the claims of different employees who are all similarly situated in their relation to the employer, notwithstanding the fact that their respective claims may differ in amount and be otherwise separate and independent of each other. [Shain v. Armour & Co., D. C. Ky., 40 F. Supp. 488.] But even if it is to be construed as making provision for joinder in other than class suits in the ordinary sense of the term, it is still no authority for the right of joinder on the part of two or more plaintiffs who are not themselves similarly situated, as, for instance, in the very case at hand, where the defense is made that the one plaintiff was not an employee at all, and where, in any event, the different capacities in which the two were allegedly employed might well entail entirely different considerations as to whether they both might properly be said to have been engaged in commerce or in the production of goods for commerce.

The case at bar, incidentally, does not purport to be a class suit, and we may therefore pass that question by, save only to say that the rule which permits a few persons to sue for themselves and others similarly situated is one of equitable cognizance, and in this State is not to be extended in its application to cases wholly lacking in equitable features and triable only as actions at law. [Lilly v. Tobbein, 103 Mo. 477, 15 S. W. 618; Harger v. Barrett, 319 Mo. 633, 5 S. W. (2d) 1100.] Indeed, even in equity practice, it is said that the rule has been largely dissipated by virtue of our statute (Sec. 849, R. S. Mo. 1939 [Mo. St. Ann., sec. 698, p. 900]), which requires all cases to be prosecuted in the name of the real party in interest. [State ex rel. v. Chicago & A. R. Co., 265 Mo. 646, 178 S. W. 129.]

In the final analysis, however, the fundamental question involved, irrespective of what the particular provision of the act may finally be interpreted to mean, is whether, in an action brought in a state court to enforce the employer's civil liability under the act, such provision relating to procedure shall prevail, or whether, on the contrary, the state court shall adhere to its own local laws and practices in administering the remedy under the act. Of course the question of who may maintain the action or be parties to it is purely

one of procedure as distinguished from any question of the substantive rights which the provisions of the act afford. [Shain v. Armour & Co., *supra*.]

While the result is in all respects the same, the matter is not to be resolved by recourse to the question of what law governs when the jurisdiction of a local court is invoked to try a transitory cause of action arising under the law of a sister state. In such a situation, the laws of the sister state are foreign to the state in which the remedy is being administered, and therefore (save for exceptional cases where the remedy is so inseparably interwoven with the cause of action that it must be pursued in order to preserve the character and integrity of the cause itself), while the substantive rights of the parties are necessarily to be governed by the law of the place where the cause of action arose, all matters of practice and procedure are to be controlled by the law of the state in which the action is instituted and the remedy sought. An act of Congress, however, is not a foreign law, but on the contrary is the law in each and every state; and when enacted in the proper exercise of the authority confided to the Congress, it is as fully binding upon the people and courts of each state as are the laws of the state itself, in so far as it creates rights pursuant to the establishment of a public policy for all. [Second Employers' Liability Cases, 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327.]

Indeed, in cases of a civil nature arising under acts of Congress and not involving the enforcement of penal laws, a state court, if invested with competent jurisdiction by the constitution and laws of its own sovereignty, has concurrent jurisdiction with the federal courts, unless, in the enactment of the particular legislation which creates the right of action, its jurisdiction is expressly or impliedly denied. [Ex parte Gounis, 304 Mo. 428, 263 S. W. 988; St. Louis, B. & M. Ry. v. Taylor, 266 U. S. 200, 45 S. Ct. 47, 69 L. Ed. 247; Minneapolis & St. Louis R. R. v. Bombolis, 241 U. S. 211, 36 S. Ct. 595, 60 L. Ed. 961; Second Employers' Liability Cases, supra; Grubb v. Public Utilities Commission, 281 U. S. 470, 50 S. Ct. 374, 74 L. Ed. 972.] This for the very reason already pointed out—that an act of Congress is not a foreign law, but a law fully operative within each state of the Union, which the courts of each state must recognize to the point of enforcing lawful rights of a citizen arising thereunder, when their own jurisdiction, as prescribed by local laws, is adequate and appropriate to the occasion.

However, notwithstanding the fact that a civil case arising under federal laws may be adjudicated in a state court if falling within the general scope of its jurisdiction, the state court, in entertaining such case, retains its identity as a state court, with its sole power to function as a court derived from the authority of the state creating it. [Minneapolis & St. Louis R. R. v. Bombolis, *supra*.] In other

words, if the state court has competent jurisdiction to enforce the federal right, it is for the reason that the state itself has so invested it; and Congress can neither confer jurisdiction upon a state court, nor, by the same token, can it regulate or control its mode of procedure in the exercise of the jurisdiction it possesses. [Ex parte Gounis, *supra*.] The origin of the right does not affect the manner of administering the remedy (St. Louis, B. & M. Ry. v. Taylor, *supra*); and when, in the case of the enforcement of a right arising under federal law, the jurisdiction of a state court is sought to be invoked by the one who has the right of action, not only must jurisdiction be invoked in conformity with local laws and practices, but in the exercise of jurisdiction, state rules of practice and procedure will also prevail in all matters pertaining to the remedy. [Ex parte Gounis, *supra*; St. Louis, B. & M. Ry. v. Taylor, *supra*; Chesapeake & Ohio R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117; Minneapolis & St. Louis R. R. v. Bombolis, *supra*; Second Employers' Liability cases, *supra*; 1 C. J. S., Actions, sec. 2, p. 966.]

It follows, therefore, that in proper adherence to local law and procedure, the demurrer to the petition should have been sustained upon the ground of misjoinder both of parties plaintiff and of causes of action. Defendant, however, is in no position to complain of the action of the court in overruling the demurrer, since by answering over and going to trial upon the merits, it waived the matter of defect of parties plaintiff and improper uniting of the two causes of action in the one petition.

It is well settled that the only objections not waived by answering over are that the petition does not state facts sufficient to constitute a cause of action, and that the court has no jurisdiction of the subject-matter. [State ex rel. v. Trimble (Mo.), 262 S. W. 357; Baugher v. Gamble Construction Co., 324 Mo. 1233, 26 S. W. (2d) 946; Hudson v. Cahoon, 193 Mo. 547, 91 S. W. 72.] Neither is an assignment based upon the overruling of a demurrer *ore tenus* to be sustained on appeal where the defendant did not stand on the demurrer. [Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S. W. (2d) 797; Bremer v. Simpson (Mo.), 226 S. W. 947.]

In the case at bar, the complaint is not that the petition fails to state facts sufficient to constitute a cause of action, but on the contrary, that it improperly unites two distinct causes of action, each belonging to a separate plaintiff, whose joinder in such circumstances constitutes a defect of parties within the statute prescribing the several causes for which the defendant may demur (Sec. 922, R. S. Mo. 1939 [Mo. St. Ann., sec. 770, p. 1000]). The answer was an effectual waiver of all such matters, and the question of misjoinder in both its aspects is therefore of no vital consequence on this appeal. [Hendricks v. Calloway, 211 Mo 536, 111 S. W. 60; Wolz v. Venard, 253 Mo. 67, 161 S. W. 760; Shaffer v. Chicago, R. I.

& P. R. Co., 300 Mo. 477, 254 S. W. 257; Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073; Belt v. St. Louis, I. M. & S. Ry. Co., *supra.*]

The next point in the case, which was argued as a very serious one at the time of its submission, has since been put at rest by an as yet unreported decision of the United States Supreme Court in two cases jointly determined, the one, the case of Kirschbaum, Petitioner, v. L. Metcalfe Walling, Administrator of the Wage and Hour Division, United States Department of Labor, and the other, the case of Arsenal Building Corporation and Spear & Co., Inc., Petitioners, v. L. Metcalfe Walling, Administrator of the Wage and Hour Division, United States Department of Labor. That question is whether plaintiffs, in their respective capacities as watchman and janitress, may be said to fall within the statutory definition of employees "engaged in commerce or in the production of goods for commerce" within the purview of the act.

The cases before the United States Supreme Court were ones in which watchmen and porters, among others, were employed in the maintenance of loft buildings whose tenants were principally engaged in the production of goods for interstate commerce. Regarding such employees as being within the act because of their relationship to the activities of the tenants, the Administrator brought suits to enjoin the petitioners, who owned the buildings, from violating the act by paying wages at lower rates than those prescribed by the act.

Suffice it merely to say that the ultimate decision was that the work of such employees, that is, the maintenance of safe and habitable buildings and the protection of the same from fire and theft, had such a close and immediate tie with the process of production for commerce, and was so much an essential part of it, as to entitle the employees to be regarded as engaged in occupations necessary to the production of goods for commerce. Those cases on their facts were infinitely more extreme than is the case at bar; and their decision leaves no room for controversy but that under the facts of the present case, both plaintiffs were "engaged in commerce or in the production of goods for commerce" within the scope and application of the act.

The next point is addressed to the question of whether there was supporting evidence for the court's finding with respect to the amount due each plaintiff from defendant. The case is of course an action at law in which the findings of the court, without the intervention of a jury, are conclusive as to the facts, if sustained by substantial evidence.

Plaintiffs, according to their version of the facts, began their employment in April, 1937, under a contract of employment whereby they were to receive compensation of $75 a month, and in addition be furnished living quarters in a single room located on the first floor of the office building. While there was a closely contested point in the court below as to whether plaintiff Carrie Niehaus had herself

been employed by defendant, the finding of the court has resolved that question in favor of plaintiff Carrie Niehaus, and there is no further issue regarding it on this appeal.

Plaintiff William F. Niehaus had been chiefly employed as a night watchman, with hours from six o'clock in the evening until six o'clock in the morning, plus an additional two hours each morning from October 15, 1939, until April 15, 1939, which was taken up by firing the furnace in the main building. His wife, on the other hand, performed the ordinary duties of a janitress, at which she put in from approximately five to nine hours a day, depending upon the season of the year. All payments under the $75 a month arrangement were made to plaintiff William F. Niehaus, and his wife at no time received any direct payment for her work.

Neither plaintiff was supplied with a time card by defendant, but after the Wage and Hour Law went into effect, both kept records of their own, plaintiff William F. Niehaus on forms which he prepared himself from the company's own records, and his wife, Carrie Niehaus, on papers upon which, at the end of each week, she recorded the number of hours she had worked. As we have already indicated, the claims in suit are for the period from October 24, 1938, when the act became effective, until July 28, 1939, when plaintiff Carrie Niehaus was discharged.

To set out a mass of facts and figures would unduly burden the opinion, and it is enough to say as we read the record, there was evidence which, if believed, supported the ultimate findings of the court.

As for plaintiff William F. Niehaus, the court found that during the period in question, such plaintiff had worked 25 weeks at 96 hours a week, and 15 weeks at 84 hours a week, for all of which his compensation, computed according to the minimum wage and overtime requirements of the act, should have amounted to $1,152.50. Deducting from this the amount of $692.40 actually paid him over such period, along with an allowance to defendant of $95 as the reasonable value of living quarters for the 40 weeks, there remained due to plaintiff William F. Niehaus the sum of $365.10, which he was entitled to recover from defendant, together with an additional equal amount as liquidated damages.

In the case of plaintiff Carrie Niehaus, the court found that during the period in question, such plaintiff had worked 25 weeks at 63 hours a week, and 15 weeks at 36 hours a week, for all of which her compensation, computed according to the minimum wage and overtime requirements of the act, should have amounted to $588, which entire sum was due and owing to her (nothing having theretofore been paid her by defendant). together with an additional equal amount as liquidated damages.

We appreciate that in an action such as this, the burden is upon the one who invokes the benefits of the act to establish the amount of the unpaid minimum wages or overtime compensation, as the case may be, which is due him from his employer. [Lowrimoore v. Union Bag & Paper Corporation, D. C. Ga., 30 F. Supp. 647; Wilkinson v. Noland Co., Inc., D. C. Va., 40 F. Supp. 1009.] It appears, however, that in this case, plaintiffs bore their burden, and adduced sufficient evidence to sustain the court's findings, as we have already pointed out.

The final point in the case has to do with the question of whether the allowance made for an attorney's fees was excessive.

It will be recalled that the court allowed an aggregate amount of $750, of which the sum of $300 was allocated to plaintiff William F. Niehaus, and the sum of $450 to plaintiff Carrie Niehaus.

As we have already pointed out, the act only provides for the allowance of a reasonable attorney's fee which is to be paid by the defendant in addition to any judgment awarded to the plaintiff (29 U. S. C. A., sec. 216), and the question of what is a reasonable fee in a given instance must therefore depend upon the facts and circumstances of the particular case.

There is this to be said for plaintiffs, that the prosecution of the case was a matter of first impression in this jurisdiction, with a new and somewhat novel act to be interpreted, and with but few precedents to guide plaintiffs' attorneys at the time of the preparation and trial of the case below. Quite obviously, such a situation would reasonably be expected to entail a greater measure of thought and care in preparing the case for trial than would be true of a case falling within some familiar field of the law, or, for that matter, than will eventually be true in a case of this same character, after the chief controversial features of the act have been finally passed upon by the courts of last resort. Whether plaintiffs were within the act, where the action should be brought, and what character of proof would be required, were all material questions that were to be taken into account; and it is therefore understandable, as the testimony shows, that plaintiffs' attorneys, in addition to the usual discussions with their clients, should have felt called upon to have numerous conferences with the local attorneys for the Wage and Hour Division in preparing the petition and otherwise getting the case in shape for trial.

But on the other hand, the very fact that so much was left to the local attorneys for the Wage and Hour Division, who not only gave their approval to the form and sufficiency of the petition but were also largely responsible for the preparation of the briefs and the argument of all preliminary matters in the trial court, indicates that to that extent there was a less basis for awarding compensation to plaintiffs' own attorneys. Moreover, there is no denying the fact that the act has been deliberately made severe in so far as it arbitrarily

casts liability upon the employer, when the employee recovers, to pay an additional equal amount as liquidated damages; and consequently, in no case where bona fide issues of law or fact exist should the still additional penalty of an attorney's fee be made larger than is reasonably required in order to secure attainment of the remedial purposes of the act. [S. H. Robinson & Co., Inc v. Larue (Tenn.), 156 S. W. (2d) 432.]

In the case at bar, the whole amount of unpaid compensation found to be due both plaintiffs was only $953.10. To be sure, plaintiffs are entitled to recover an additional equal amount as liquidated damages, and they unquestionably have profited by the services of their attorneys in securing the whole amount of the judgment. However, the only controversy either of fact or of law went to the recovery of $953.10, and the recovery of liquidated damages follows as a matter of course upon the recovery of the basic amount for which the suit was brought.

The reported cases show that in fixing attorneys' fees under the act, the courts have invariably manifested a strong inclination to keep the allowances within such moderate limits as to maintain an even balance of justice between the employer and his employee. [Lefevers v. General Export Iron & Metal Co., D. C. Tex., 36 F. Supp. 838; Lewis v. Nailling, D. C. Tenn., 36 F. Supp. 187; St. John v. Brown, D. C. Tex., 38 F. Supp. 385.]

We have concluded that under the facts and circumstances of the present case the allowance of $750 is excessive as defendant contends, and that the very most that could reasonably be allowed by way of an attorney's fee would be the aggregate sum of $450, of which the sum of $200 should be awarded to plaintiff William F. Niehaus on account of the services rendered in his behalf, and the sum of $250 awarded to plaintiff Carrie Niehaus on account of the services rendered in her behalf.

The Commissioner accordingly recommends that if plaintiffs will, within 10 days, remit the total sum of $300, of which $100 is to be remitted by plaintiff William F. Niehaus, and $200 is to be remitted by plaintiff Carrie Niehaus, the judgment of the circuit court shall be reversed and the cause remanded with directions to the circuit court to enter up a new judgment directing that plaintiff William F. Niehaus have judgment against defendant in the amount of $930.20, and that plaintiff Carrie Niehaus have judgment against defendant in the amount of $1,426, with costs to both plaintiffs, and with such new judgment to bear interest at the rate of 6% per annum from November 10, 1941, the date upon which the original judgment became final. Otherwise the Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded for a new trial.

126

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded in accordance with the recomendations of the Commissioner. *McCullen* and *Anderson, JJ.,* concur; *Hughes, P. J.,* absent.