**CHRISTENSEN v. PARAMOUNT PIC-
TURES, Inc., et al.**

**Civ. No. 1849.**

United States District Court
D. Utah, Central Division.

Dec. 27, 1950.

Supplemental Opinion Jan. 26, 1951.

Weller & Shibley, Los Angeles, Cal., Richards & Bird, Salt Lake City, Utah, for plaintiff.

Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendants.

RITTER, District Judge.

This matter came on for separate trial upon the issue of limitations of action on the complaint, respective answers of defendants, and a stipulation that during the period January 1, 1937 to January 31, 1950 the defendant, Paramount Pictures, Inc., owned all of the capital stock of the defendant, Intermountain Theatres, Inc., and that from and including January 1, 1950 to date United Paramount Theatres, Inc. has owned all of the capital stock of the defendant, Intermountain Theatres, Inc.[1]

The action is one for treble damages and equitable relief under the Sherman Anti-Trust and Clayton Acts.[2]

█ There is no federal statute of limitations here applicable. The United States Supreme Court has held[3] that the statute of limitations applicable to civil actions under the anti-trust laws is the statute of the forum. The applicable law, therefore, is the law of Utah.

---

1. The complaint in United States v. Paramount Pictures, Inc., et al., was filed in the United States District Court for Southern District of New York, July 30, 1938. A consent decree was entered November 20, 1940 and was effective until August 1, 1944 against all the defendants except United Artists, Columbia and Universal. At that time the government moved for trial against all of the defendants. The Final Expediting Court Decree was rendered Feb. 8, 1950, and the U. S. Supreme Court Mandate on Appeal filed in the district court July 8, 1950. 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Id., D.C. S.D.N.Y.1949, 85 F.Supp. 881.

2. 15 U.S.C.A. §§ 1, 2 and 15.

3. Cope v. Anderson, 1947, 331 U.S. 461, 463, 67 S.Ct. 1340, 91 L.Ed. 1602.

## I.

The first question with which we are here confronted is the construction of 1943 Utah Code Annotated, Section 104—2—26, Subdivision (1), which provides that the period of limitations shall be one year on "An action for liability created by the statutes of a foreign state". The issue is whether the Sherman and Clayton anti-trust laws of the United States are "statutes of a foreign state" within the meaning of this provision. Counsel for the defendants contend that 1943 Utah Code Annotated 104—2—24.10 is the limitation upon actions for a liability created by the statutes of Utah and that Utah Code 1943 104—2—26 (1) is the limitation upon actions created by statutes of all other jurisdictions.

Apparently no state in the Union has had a statute of limitations comparable to this Utah statute. And there is no decision of the Supreme Court of Utah that has ever discussed or considered it.

Defendants' counsel ask us to construe the word "state" in a large philosophical sense meaning "government" and to construe the word "foreign" to mean "other".

Counsel for plaintiff contend that the language "foreign state" must be given it ordinary, usual and natural meaning and that it does not include the Sherman and Clayton anti-trust laws of the United States. They contend the statute which provides the limitation of action in such cases is Utah Code Annotated 1943 104—2—30 which is the limitation for actions not otherwise specifically provided for.

There is little light thrown on this subject by the legislative history of the provision. The Compiled Laws of 1876 is the first relating to limitations on such actions.[4]

Originally there was a three year limitation upon an action for a liability created by statute, and there was no distinction between statutes of this state, statutes of the United States and statutes of foreign states. This remained unchanged until 1905 when Section 1110 was modified and for the first time a classification is made between limitations upon actions for a liability created by statutes of a foreign state or by statutes of this state. They still say nothing about statutes of the United States. It is perplexing to understand why a classification was attempted because the same limitation of one year was provided for both. In 1937 a different period of limitations was provided for the different classifications. A three year limitation was placed upon an action for a liability created by the statutes of this state, and the 1905 limitation of one year was left in effect as to an action for liability created by the statutes of a foreign state.

The court is of the opinion that it would be a strained and unnatural interpretation of the language of the statute to adopt defendants' view. It is doubtful that the legislature intended to use the word "state" in the political science and philosophical sense claimed. And it would be strange to interpret the word "foreign" to include the statutes enacted by Congress which in their proper sphere are no more foreign to the state of Utah than are the laws enacted by its own legislature. The laws of a sister state have no applicability here and might in that sense be "foreign". The same cannot be said of the laws of the United States. Hence the court concludes that Utah Code Annotated 1943 103—2—26 is not the applicable statute of limitations in this case.[5]

---

4. Sec. 1110 and Sec. 1112.

5. Where the legislature desired to refer to the United States it has shown many times that it knew how to do so; see, for example, Utah Code Ann. 1943, Sec. 104—2—21; 104—46—1, subd. 3, 4 and 5; 104—47—6; 104—47—10; 104—47—13.

   Cases other than those relating to the statutes of limitation show that the government and statutes of the United States are not considered "foreign" to a state:

   H.O.L.C., a corporation created under the laws of the U. S., is not a "foreign corporation" nor organized under the laws of a "foreign state", Dodson v. Home Owners Loan Corp., Tex.Civ.App., 1938, 123 S.W.2d 435; Bezat v. Home Owners Loan Corp., 1940, 55 Ariz. 85, 98 P.2d 852; Home Owners Loan Corp. v. Caplan, 1942, 236 Mo.App. 1276, 164 S.W.2d 652.

## II.

The defendants next contend that if Section 104—2—26 (1) is not controlling, that Subdivision (2) of the Section is controlling in so far as plaintiff seeks to recover treble damages. Subdivision (2) applies to an action upon "a statute for a penalty" where the action is given to an individual, and it provides for a one year limitation. Counsel urge that the treble damage feature of the anti-trust laws is a "penalty" for a violation of the anti-trust laws, which is an offense against the United States. It is urged that the recovery of actual damages is remedial, i. e., compensation for plaintiff's loss, but that when the statute goes beyond compensatory damages it inflicts punishment designed to deter violations.[6]

On the other hand, counsel for plaintiff contend that the Utah statute of limitations for "An action upon a statute for a penalty or forfeiture where the action is given to an individual * * *." does not apply to actions for treble damages under the Sherman and Clayton Anti-Trust Acts.[7]

It is my judgment that the Utah statute of limitations, when it speaks of an action upon a statute for "a penalty or forfeiture where the action is given to an individual, or to an individual and the state," refers to actions to enforce the criminal law, in the nature of the well known informers actions. The language of this statute is not modern. It has been in the Anglo-American statutory law for a long time and I very seriously doubt that the legislative history of this provision would justify its application to suits for treble damages under the Sherman Anti-Trust and Clayton Acts.[8]

The word "penalty" covers a whole range of meanings. At one extreme it may mean a punishment imposed upon an offender against the criminal laws. At the other, it may mean simply the means by which a

The Federal Land Bank is not a "foreign corporation". Homan v. Connett, 1941, 348 Mo. 244, 152 S.W.2d 1053.

The Fair Labor Standards Act is not a "foreign law": Niehaus v. Joseph Greenspon's Son Pipe Corp., 237 Mo. App. 112, 164 S.W.2d 180.

The Federal Emergency Price Control Act was not "a statute of a foreign jurisdiction": Regan v. Kroger Grocery & Baking Co., 1944, 386 Ill. 284, 54 N.E.2d 210, 217. This Illinois court quoted the Supreme Court of the U. S., in Claflin v. Houseman, 93 U.S. 130, 23 L.Ed. 833: "The disposition to regard the laws of the United States as emanating from a foreign jurisdiction is founded on erroneous views of the nature and relations of the State and Federal governments * * *. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent."

To construe the statute of limitations so as to discriminate against causes of action created by Federal statutes may also be unconstitutional: Republic Pictures Corp. v. Kappler, 151 F.2d 543, 162 A.L.R. 228, affirmed 1946, 327 U.S. 757, 66 S.Ct. 523, 90 L.Ed. 991.

6. O'Sullivan v. Felix, 233 U.S. 318, 324, 34 S.Ct. 596, 58 L.Ed. 980; Missouri Pac. R. R. v. Ault, 256 U.S. 554, 41 S. Ct. 593, 65 L.Ed. 1087; Corbusier v. Hughey, 10 Cir., 1941, 118 F.2d 483; Noble v. Martin, 191 Wash. 39, 70 P.2d 1064; Harvey v. Booth Fisheries, U.S. D.C.W.D.Wash.1915, 228 F. 782; Southern Package Corp. v. Walton, 196 Miss. 786, 18 So.2d 458; Overnight Motor Transportation Co. v. Missel, 316 U. S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123.

7. Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Shelton Electric Co. v. Victor Talking Machine Co., U. S.D.C.N.J.1922, 277 F. 433; Ben C. Jones & Co. v. West Publishing Co., 5 Cir., 1921, 270 F. 563; Momand v. Universal Film Exchange, 1 Cir., 1948, 172 F.2d 37, affirming, D.C., 43 F.Supp. 996; Hansen Packing Co. v. Swift & Co., D. C.S.D.N.Y.1939, 27 F.Supp. 364.

8. See Mr. Justice Gray's opinion in Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123, and Lord Watson's statements to which he refers. Compare Shelton Elec. Co. v. Victor Talking Machine Co., D.C., 277 F. 433, 435, and Lord Lindley's reasoning in the English case there cited, giving the legislative history of the 1833 English statute of limitations.

private right is made secure. It is the judgment of this court that the Utah statute uses the word in the former sense and that the treble damage sanction in the antitrust laws was intended primarily to protect private rights.

Moreover, the question has been decided by a federal district court in California and by the 9th Circuit.[9]

The sections of the California Code of Civil Procedure construed by the District Court for the Southern District of California and by the 9th Circuit were Section 340(1) and Section 338(1). Many of the provisions of the Utah Statutes come to us from the California Code. A comparison of these sections with our own leads me to conclude that Sections 340(1) and 338(1) of the California Code of Civil Procedure are the ancestors of the comparable provisions of Utah Code Annotated, Sections 104—2—26(1) and 104—2—24.10. While courts of California have not determined which of these two statutes governs actions for treble damages under the antitrust laws, the Federal District Court in California and the 9th Circuit have held that the liability under 15 U.S.C.A. §§ 15, 26, is one "created by statute, other than a penalty or a forfeiture". The construction of the statute at its origin is strongly persuasive upon us.

It follows that the Utah statute of limitations which governs the time within which actions for treble damages may be recovered under the Federal anti-trust laws is Section 104—2—30, Utah Code Annotated 1943, which provides:

"An action for relief not otherwise provided for must be commenced within four years after the cause of action shall have accrued."

### III.

Counsel for plaintiff further contend that the "War-Time Tolling Statute"[10] tolled the Utah Statute of limitations during the period from October 10, 1942 to June 30, 1946. That statute declares: "That the running of any existing statute of limitations applicable to violations of the antitrust laws of the United States, now indictable or subject to civil proceedings under any existing statutes, shall be suspended until June 30, 1945, or until such earlier time as the Congress by concurrent resolution, or the President, may designate. This Act shall apply to acts, offenses, or transactions where the existing statute of limitations has not yet fully run, but it shall not apply to acts, offenses, or transactions which are already barred by the provisions of existing laws."[11]

Defendants contend that the War-Time Tolling Statute was intended to apply only to criminal proceedings and civil suits by the United States, and does not apply to suits by private persons.

There is a well considered opinion by Judge Mathes in the United States District Court for the Southern District of California, holding that the statute is applicable to private actions for treble damages. Judge Mathes considers the legislative history of the statute and holds that it does not change the meaning of the plain language of the statute and that its application to civil suits by private persons is in furtherance of the ultimate purposes of the tolling statute.[12]

There are two other Federal District Court decisions on this subject. Both hold that the War-Time Tolling Statute applies to civil actions by private persons as well as actions by the United States.[13]

9. United West Coast Theatres Corporation v. South Side Theatres, Inc., D.C. S.D.Cal.1949, 86 F.Supp. 109, 110, 111. Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 1948, 170 F.2d 569, 576–578.

10. Act of Oct. 10, 1942, 56 Stat. 781, and Act of June 30, 1945, 59 Stat. 306.

11. D.C., 86 F.Supp. 111.

12. (D.C.S.D.Cal.1949). United West Coast Theatres Corporation et al. v.

South Side Theatres, Inc., et al. (Twentieth Century Fox Film Corporation, et al., Third-Party Defendants). D.C. S.D.Cal.1949, 86 F.Supp. 109.

13. Tiffin Building Corp. v. Balaban & Katz Corp. et al., U.S.D.C.N.D.Ill.1949, 87 F.Supp. 121; Winkler-Kosh Engineering Co. v. Universal Oil Products Co. et al., U.S.D.C.S.D.N.Y., —— F.Supp. ——.

The words in the Act of Congress should be given their natural significance. The language "civil proceedings under any existing statutes" in the judgment of this court means what it says, and plainly includes civil suits by private persons as well as criminal proceedings and civil suits by the United States.

The Ninth Circuit recently has held that the War-Time Tolling Statute is applicable to a private suit for trebled damages under the anti-trust laws.[14]

The running of the Utah statute of limitations was suspended from October 10, 1942 to June 30, 1946.

## IV.

Finally, counsel for plaintiff contend that the Utah statute of limitations has been suspended during the pendency of a suit for injunction under the Sherman Act, commenced by the United States in the Southern District of New York on July 30, 1938 against all defendants in this action except Intermountain Theatres, Inc.[15]

The applicable portion of Section 5 of the Clayton Act, U.S.C.A. Title 15, § 16, second paragraph, provides: "Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

Three questions are raised by this contention:

1. Whether or not the United States had instituted, and there were pending proceedings in equity or criminal prosecutions to restrain or punish the defendants for the matters complained of in the present suit. The basic test will be whether or not the private causes of action in the present suit are "based in whole or in part on any matter complained of" in the United States v. Paramount Pictures, Inc., et al.

2. Whether or not during the hiatus of the period of the consent decree United States v. Paramount Pictures, Inc., et al., was pending within the meaning of the language of 15 U.S.C.A. § 16, 2d paragraph, "shall be suspended during the pendency thereof".

3. Whether or not United States v. Paramount Theatres, Inc. should be considered to have been pending against Intermountain Theatres, Inc., a wholly owned subsidiary of Paramount, to the same extent that it was pending against the parent corporation, although Intermountain was not a named defendant therein.

First, plaintiff contends that his private rights of action in the present suit are "based in whole or in part" on matters "complained of" in the suit of United States v. Paramount Pictures, Inc., et al. Of course, the test of the validity of his position is a comparison of the two suits. And, plaintiff's counsel has provided us with a full and detailed comparison of the specific matters of which plaintiff complains in his complaint, with the matters complained of in the government's original and amended and supplemental complaints in United States v. Paramount, as well as a comparison with the final Findings of Fact and Conclusions of Law made by the Federal Expediting Court in its final judgment. All of these documents are, by stipulation of the parties, before the court for the purposes of this separate trial on the limitation issue.

This comparison leaves no doubt in the Court's mind that the test of the applicability of Section 5 of the Clayton Act is met. Plaintiff's allegations with reference to the over-all conspiracy existing among the defendants, the program of theatre admission price fixing employed by this conspiracy, the fixed, uniform and arbitrary clearance system imposed by these defendants and this conspiracy, together with the imposition of unreasonable clearances, the licensing of pictures through the device of block-booking, the employment of form-

---

14. Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Limited, 9 Cir., 185 F.2d 196.

15. U. S. v. Paramount Pictures, Inc. et al., 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Id., D.C.S.D.N.Y.1949, 85 F.Supp. 881.

452

ula deals, master agreements and franchises by this conspiracy and by these defendants, the imposition of discriminatory contract terms against plaintiff and other independent exhibitors and in favor of defendants, their affiliated chains and other large theatre chain operators, the creation and existence of monopoly power by this conspiracy and by these defendants, including the power to exclude from fair competition this plaintiff and other independent exhibitors, and the illegal use of this monopoly buying power in connection with exhibition of motion pictures throughout the country and in the Salt Lake City area, are matched by specific allegations, findings of fact or conclusions of law in United States v. Paramount.[16]

Second, plaintiff contends that United States v. Paramount was pending, within the meaning of Section 5 of the Clayton Act, against Twentieth Century-Fox Film Corp., Loew's Inc., Paramount Pictures, Inc., Warner Bros. Pictures, Inc., R.K.O. Radio Pictures, Inc., and their subsidiaries during the period from November 20, 1940, the date on which a consent decree was entered into by these defendants, to August 7, 1944, when the Government moved for trial on the original and amended and supplemental complaints.

In the cases that have been decided thus far the War-Time Tolling Act bridged the gap of the consent decrees and hence there was no decision upon this question. Here, the gap is not bridged. And, it is necessary to decide whether Section 5 of the Clayton Act continued to toll the statute during the period covered by the consent decrees.

In order more graphically to picture the situation, the following outline is provided:

| Date | Action Taken |
|------|--------------|
| July 30, 1938 | U. S. v. Paramount was filed, including all the named defendants except Intermountain. |
| November 20, 1940 | Consent decree entered against Paramount, Loew's RKO, Twentieth Century-Fox, Warner Bros., and their subsidiaries. As to defendants United Artists, Columbia and Universal, no consent decree was entered and no change in status was effected. |
| October 10, 1942 | War-Time Tolling Statute enacted. |
| August 7, 1944 | Government moved for trial against all the defendants. |
| June 30, 1946 | War-Time Tolling Statute expired. |
| November 8, 1948 | RKO consent decree and action terminated. |
| March 3, 1949 | Paramount consent decree and action terminated. |
| February 8, 1950 | Expediting Court rendered final decree. |
| April 8, 1950 | Appeal time expired for United Artists, Columbia, Universal, Warner Bros. Pictures Distributing Corp. |
| June 5, 1950 | Lower court judgment affirmed on appeal by Loew's Warner Bros. and Twentieth Century-Fox only. |
| June 14, 1950 | Complaint in case at bar filed. |
| June 29, 1950 | Petition for rehearing denied. |
| July 8, 1950 | Mandate of United States Supreme Court filed. |
| October 16, 1950 | Second petition for rehearing by defendants Loew's, Warner Bros. and Twentieth Century-Fox denied. |

16. The detailed data for ready comparison are found in a brief filed by counsel for plaintiff, at pages 18–24.

We adopt the following statement of the issue from brief of plaintiff's counsel:

"There can be no question that this action was pending as to all defendants from July 30, 1938, the date on which the complaint in U. S. v. Paramount was filed, until November 20, 1940, when a consent decree was entered into between the Government and the defendants Twentieth Century-Fox Film Corp., Warner Bros. Pictures, Inc., Loew's Inc., Paramount Pictures, Inc., RKO Radio Pictures, Inc., and their subsidiaries. As to the defendants not consenting to the decree, Columbia Pictures, United Artists and Universal Pictures, Inc., there can be no question that the action remained pending during the period after the consent decree and continued to be pending against them after the Government's motion for trial on August 7, 1944, at least, until the final judgment of the District Court was rendered on February 8, 1950. Similarly, as to those defendants participating in the consent decree, no problem can arise as to the pendency of the Government's action from August 7, 1944 until the date on which judgment became final against them. The final terminating date is different as to the various defendants. RKO and its subsidiaries entered into a final consent judgment and decree on November 8, 1948, and Paramount Pictures, Inc. and its subsidiaries, concluded such a judgment and decree on March 3, 1949. Twentieth Century-Fox, Loew's Inc. and Warner Bros. Pictures, Inc. continued to litigate the action until October 16, 1950, when their final motion for rehearing of the Supreme Court's judgment affirming the District Court's decree was denied.

"The issue raised here, however, is whether U. S. v. Paramount was pending against Twentieth Century-Fox Film Corp., Loew's Inc., Paramount Pictures, Inc., Warner Bros. Pictures, Inc., RKO Radio Pictures, Inc. and their subsidiaries, from November 20, 1940, the date on which the consent decree was entered into by these defendants, to August 7, 1944, when the Government moved for trial on the original and amended and supplemental complaint still pending."

The language to be construed here is, "shall be suspended during the pendency thereof", in the second paragraph of Section 16, Title 15, U.S.C.A.

It might be said with some force that, during the three year trial period of the consent decree, there was an adjudication binding upon the consenting parties as to the course of action enjoined. Though, I think it clear that everything was open for consideration after that period. However, I have concluded that the common sense view of the matter is that United States v. Paramount was pending during the hiatus of the period of the consent decree within the meaning of Section 16 of Title 15, U.S.C.A.

The opinions of the Expediting Court[17] and of the United States Supreme Court[18] are explicit that the consent decree was a stop-gap measure to last three years as a trial period. Everything was open for consideration after that time. Any party might then apply to vacate the decree. And, that is exactly what happened. When the Government moved for trial it was free to seek all the relief prayed for in its amended complaint.

The Conclusions of Law of the Expediting Court strongly confirm this view. Paragraph 4 of the Conclusions provides: "4. The consent decree entered herein on November 20, 1940 does not foreclose enforcement in this suit at this time of any rights or remedies which the plaintiff may have against any of the defendants by virtue of violations of the Sherman Act by them, except such acts as were in accord with such decree during the period it was in force."

Paragraphs 7, 8 and 9 make absolutely clear that the court is adjudicating matters "both before and after the entry of the consent decree." Assuredly, this is unusual, if the consent decree is to be regarded as an adjudication of anything.

17. D.C., 66 F.Supp. 323, 333.

18. 334 U.S. 131, footnote 3, 68 S.Ct. 915, 92 L.Ed. 1260.

454

This is not the action of a court of equity modifying an existing decree because of a change of circumstances. It is an original determination of all issues raised by the pleadings in the action.

References to the consent decree itself, which support the conclusion here reached, are given in the note.[19]

The express exclusions from the consent decree are significant. Certainly, nothing was decided in the consent decree which at all affected the nonconsenting parties, and United States v. Paramount, during the interval, was pending against them.

Even against consenting parties the government's complaint, alleging monopoly, and seeking remedies of divorcement and divestiture, was still pending because the consent decree by its own terms excluded these.[20]

This consent decree involved no adjudication, no merger, and was not res adjudicata as to any issue raised by the complaint. Surely, such decree provides a most insecure foundation for private rights of action "based in whole or in part on any matter complained of" in United States v. Paramount, within the meaning of the language of Section 16, Title 15, U.S.C.A. The reasons for the suspension of the statute of limitations in this section seem to me to apply with greater force to the interval covered by this consent decree. If the statute is not suspended, the plaintiff has no sure basis for recovery on his private right of action under such a decree. Yet, he will feel that time is running out on him and will press his suit, which may turn out to be a groundless one. The defendants, during a trial period, will be subjected to harassing litigation, perhaps groundless in the end. And, the purposes of the temporary period in which to enable the industry to solve its own problems are defeated. Tolling the statute of limitations protects the plaintiff while his right

of action ripens, and rewards him for withholding his suit at a time when it is the policy of the law to free the defendant from its annoyance. It would appear that Section 16 has a fortiori application to such a case.

The result is that effect will be given to the two suspension statutes and plaintiff is entitled to go back for four years, under the Utah statute, after first making allowance for the period during which the statute of limitations is tolled. Momand v. Universal Film Exchanges, supra.

Third, plaintiff contends, since Intermountain Theatres, Inc. was a wholly owned subsidiary of Paramount, the case of United States v. Paramount should be regarded as pending against it to the same extent it was pending against the parent corporation, although Intermountain was not a named defendant.

The case will be set down for further argument upon this point on the next rule day. The point has not been argued fully enough to satisfy the Court, defendants' counsel filed no brief upon it, and the brief of the learned counsel for plaintiff, exhaustive upon the other points, is indecisive upon this one.

## Supplemental Opinion

The point of law left undecided in the opinion filed in this case since has been argued fully and the Court concludes that the case of United States v. Paramount Pictures, Inc. should not be regarded as pending against Intermountain Theatres, Inc. The latter company was not a named defendant in United States v. Paramount Pictures, Inc. Counsel for plaintiff urges upon us that Section 5 of the Clayton Act,[1] the second paragraph, does not mention the word "defendant", whereas the first paragraph of that section mentions the word "defendant" in three instances. Counsel, therefore, suggests that Congress meant

19. Preamble of consent decree; paragraphs I, XI subd. (5), XXI, XXIII subd. (d) and (e), and the various arbitration provisions of the decree, e.g., paragraphs IV, VI, VIII, IX, XVI and XXII, among others.
20. Paragraph XXI of the decree.
1. Section 16, Title 15 U.S.C.A.

something different in the second paragraph than in the first, and that the action in United States v. Paramount Pictures, Inc. may be regarded as pending against concerns not named defendants. Counsel argues, since Congress did not mention the word "defendant" in the second paragraph, all that it is necessary to find is that in United States v. Paramount Pictures, Inc. the government complained of the activities of the wholly owned subsidiary, though it was not a named defendant, and that those activities are the same as those of which the plaintiff complains in this action.

The language under construction in the second paragraph is "based in whole or in part on any matter complained of in said suit or proceeding". Counsel for defendant, Intermountain Theatres, Inc., contends that the foregoing language "any matter complained of" means acts of the *named defendants* of which the government complains.

This court is of the opinion that the plain and ordinary meaning of the language referred to is that contended for by defendant Intermountain Theatres, Inc. Even though, as pointed out by plaintiff's counsel, the government complained of the activities of Paramount subsidiaries, United States v. Paramount Pictures, Inc. was an action against that named defendant in which the government complained of *its* acts through its agents, employees and subsidiaries.

When Congress used the words "any matter complained of" it referred to acts of the named defendants of which the government might complain in any suit or proceeding.

The injunction binds those agents and subsidiaries as it does the parent company, but that is quite a different thing than to suggest that the tolling statute in Section 5 of the Clayton Act was intended to suspend the operation of the statute of limitations against a corporation not named as a party to the government's suit.

Momand v. Universal Film Exchange, Inc., et al., D.C., 43 F.Supp. 996, does not reach the question here presented.